*ROBERT A. SMITH, County Treasurer Ramsey County,

*v.*

EDWARD WEBB.

*ROBERT A. SMITH, County Treasurer Ramsey County,

*v.*

WILLIAM M. HARRISON.

Sec. 4, Art. 9, of the constitution of Minnesota, does not stand in the way of legislation providing for the taxation of shares in national banks.

The laws of Minnesota, in force in 1865, do not permit the taxation of shares in national banks.

These were proceedings under the statute for the collection of taxes on personal property. The plaintiff filed with the clerk of the District Court for Ramsey County, an affidavit, stating that he has been unable to collect by distress or otherwise, the sum of $144, which appears upon his duplicate for the year 1865, as taxes duly assessed against the defendant, Edward Webb, upon personal property, and requested that the notice provided by law, to show cause, &c., should issue to said Webb. A notice was issued by the clerk of said court, and was served on said Webb, requiring him to show cause why he should not pay said tax. The defendant Webb, who is a resident of said county, appeared in obedience to said notice, and for cause why he should not pay said taxes, alleged substantially, that about June, 1865, he, upon being requested to do so by the assessor, duly listed the personal property of

*Chief Justice WILSON took no part in the hearing or decision of these causes.

which he was owner, and which, by the provisions of the statute, he was required to list; that at that time he was the owner of 40 shares of stock of the National Marine Bank, which stock was not listed by him; that the assessor afterwards, and without the consent of defendant, entered the said 40 shares of stock upon the statement of personal property made by defendant, and 'delivered to the assessor, and valued the same at $4,000; that said assessor in his return to the county auditor of taxable property for the year 1865, returned in addition to the personal property listed by defendant, the sum of $4,000 as the value of said stock; that said county auditor duly assessed a tax upon the personal property listed by defendant for said year, and duly entered such tax upon (the book commonly called) the tax duplicate for the year 1865, as the personal tax of defendant for that year, and for a further tax against defendant, without his consent, assessed and entered upon said duplicate, a tax of $144 upon the said 40 shares of stock, which tax is the one referred to in said notice; that the National Marine Bank of St. Paul is an association formed and organized about the month of June, 1865, and ever since acting and doing business under and in pursuance of the act of Congress entitled "An act to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof," approved June 3, 1864; that the capital stock of said association since its organization has all been invested in bonds of the United States, mentioned in said act of Congress; that said tax upon said shares, exceeds the rate of taxation imposed upon shares in banks organized under the authority of the State.

The plaintiff moved the court for a rule for the payment of the tax, upon the ground that no sufficient cause had been shown by defendant. The court decided that the defendant was not liable to pay the tax, and dismissed the proceeding, and the plaintiff appeals from the order dismissing the same, to this court.

The proceeding against Wm. M. Harrison, was similar to that against Webb, and the facts are substantially the same, except that Harrison was a resident of Minneapolis, Hennepin county, and the tax was the only one against him on personal property in Ramsey county.

H. J. HORN and I. V. D. HEARD, for appellant.

BIGELOW & CLARK, LORENZO ALLIS, and MORRIS LAMPREY, for respondents.

*By the Court*—BERRY, J.—That the State taxation of the shares of stock in national banks, is, under the legislation of Congress, *per se* lawful, has been determined by the Supreme Court of the United States, in the recent case of *Van-Allen v. The Assessors*, 3 Wal. 573. While we deem it not improper to remark that some portions of the reasoning found in the prevailing opinion pronounced in this case are unsatisfactory to our minds, and would, as we think, lead to startling consequences, we follow this adjudication by the tribunal of last resort and paramount authority, as in duty bound to do.

It was assumed by the court and counsel in *VanAllen v. The Assessors*, that Congress possessed authority to pass the national banking law, and to grant the new rights and privileges thereby conferred. The same assumption is made in the case at bar, and neither party could have any interest in calling it in question. It would seem to follow that if it be a legitimate exercise of the constitutional powers of Congress to *establish* a national banking system, Congress must, in the absence of express inhibition, possess the right to surround that system with whatever safe-guard may be necessary and proper to protect the banks organized thereunder, and their stockholders, from injury by the States. And if in the exercise of legislative discretion to this end, Congress sees fit, as it has done, to regulate the taxing power of the States over

these institutions, that exercise is not to be questioned; because, by the the terms of the Federal Constitution "the laws of the United States which shall be made in pursuance thereof, * * * * shall be the supreme law of the land, and the judges in every State shall be bound thereby, anything in the constitution or laws of any State to the contrary notwithstanding."

It is then not necessary nor important to inquire whether the 41st Sec. of the national banking act, by which it is provided, among other things, that nothing contained in the act shall be construed to prevent the shares of stock from being included in the valuation made for the assessment of taxes *imposed by or under State authority,* is to be regarded as a *permission* to the States to tax that which, without such permission they could not tax, or as a *regulation* or *restriction* of a taxing power inherent in the State, and underived from the general government. In either case the taxes must be imposed "by or under State authority," and to State constitutions and laws must State officers look for the rules by which they are to be guided in levying and collecting taxes. If this provision in Sec. 41 be in the nature of a *permission*, then State laws can operate only to the extent of such permission. If the provision be a *regulation* simply, then State law can operate only in obedience to it.

It becomes necessary, therefore, to examine our State constitution and laws, to ascertain whether authority is there given to tax the shares in question, consistently with the conditions imposed by Congress. Let us see first what these conditions are. Section 41 before cited enacts, "that nothing in this act shall be construed to prevent all the shares in any of said associations held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority, at the place where such bank is located, and not elsewhere, but not at a greater rate

than is assessed upon other moneyed capital in the hands of individuals of such States. (2.) *Provided further*, that the tax so imposed under the laws of any State upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where such association is located."

The construction which we place upon these provisions is, that the taxes authorized must be imposed upon the shares *eo nomine*, and in no other way. Whether a tax in some other form, but equivalent in rate or amount would have answered all purposes to prevent unfair discrimination or not, Congress has pointed out the kind of interest upon *which*, the person *whom*, and the place *where* the taxes may be levied, and has thus excluded every other mode of taxation. As to the last proviso cited, that the tax imposed upon shares in national banks shall not exceed the rate imposed upon the shares of State banks, we hold that it is not necessary that State banks should exist in order to justify the taxation of the shares in national banks.

Manifestly, the object of the provision was to prevent unfair discrimination against the national banks, and in favor of State banks. If there be no State banks, and none authorized by law, no such discrimination is possible, and the provision can, therefore, have no operation. And we are confirmed in this view by the further consideration that it was expected and believed that the national banks with their enlarged privileges would drive the State banks out of existence. The result is fast justifying the expectation. That such was the intention, is asserted in the dissenting opinion pronounced by Chief Justice Chase (in *Van Allen v. The Assessors*,) under whose direction, as Secretary of the Treasury, the act was prepared. With this prospect in view, it is not to be presumed that Congress, as a compensation to the States for the withdrawal from taxation of the immense capital invested in State banks, would

proffer the empty delusion of a privilege to tax the stock of national banks, at the same time making that privilege dependent upon a state of things which would speedily cease to exist. But even if there be no State banks in *actual* operation, the fact that they may exist under a State law, would be as fatal to the exercise of the right to tax the shares in national banks as if such State banks were in actual existence, unless the State laws also provide for a taxation of State banks, equivalent at least, to a tax upon the shares of national banks. The *laws* of the State must, in this respect, be conformed to the law of Congress.

We now proceed to the examination of our Constitution and laws, for the purpose of ascertaining whether they permit the taxation of these shares, and whether they are in harmony with the act of Congress. Sec. 3, Art. 9, of our Constitution, provides that "laws shall be passed taxing all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, and also all real and personal property according to its true value in money," with certain exemptions not important in this case. This enumeration would, manifestly, include shares of stock in national banks. But it is urged that Sec. 4 of the same article makes an *exclusive* provision for legislation subjecting all banks and all bankers, and their property as such banks and bankers to taxation. Sec. 4 reads as follows : "Laws shall be passed for taxing the notes and bills discounted or purchased, money loaned, and all other property, effects, or dues of every .description, of all banks, and of all bankers, so that all property employed in banking, shall always be subject to a taxation equal to that imposed on the property of individuals." It is contended by the counsel for the banks, that the language "*all banks* and *all bankers*," includes national as well State banks, and that if this be so, national as well as State banks must be taxed, and *only* taxed under some law enacted in pursuance of and in compliance to this imperative requirement of the Constitution. In answer to

this, it is said, and certainly with some plausibility, that Section 4 refers solely to banks organized under the law of this State, and over which the State could exercise complete jurisdiction.   It is also to be observed that as the only tax permissible, as to national banks, is a tax upon *shares* against the holders thereof, Section 4 could not apply to national banks. But assuming that the words " all banks and all bankers " are unlimited in their signification, and *in terms* comprehend banks and bankers of every description, whether authorized by the laws of this or any other State, or of the United States, let us look at the *effect* which is to be given to these words when read in connection with the Constitution and laws of the United States.   By the provision already cited from the Federal   Constitution,   " the   Constitution   and   laws   of   the United States which shall be made in pursuance thereof," are made " the supreme law of the land."   If then, as we have endeavored to show, the national bank act passed in pursuance of the Constitution, exclusively restricts the right of the State to tax the property employed in banking by the national banks to the taxation of the *shares* of stock held therein, the national bank act, as a part of "the supreme law of the land," withdraws the national banks from the operation of that portion of our State Constitution, (to-wit: Sec. 4 above cited,) by which it is contended and assumed a special, definite and exclusive rule is laid down for the guidance of our Legislature in subjecting to taxation all property employed in banking by "*all* banks and *all* bankers."   But notwithstanding this result, Section 3 of Art. 9 before quoted, which requires laws to be passed for the taxation of *all* property, real and personal, remains unaffected.   Among the different species of property there enumerated, we find "investments in stocks," and "joint stock companies," which designations obviously include shares of stock in national banks.   State constitutions and State laws must be construed as subject to the supremacy of the Constitution and laws of the United States, and thus construing the

Constitution of Minnesota, we are brought to the conclusion that Section 4 before referred to, is rendered inoperative as to national banks by the 41st section of the national bank act, but that as our State Constitution requires *all* property to be taxed, we may properly look at Section 3 as conferring upon our Legislature the authority necessary to reach the shares of stock sought to be taxed in these actions. Our Constitution *in terms*, directs the Legislature to pass laws for the taxation of United States stocks; yet it is, in this respect, controlled by the *supreme law of the land*, both under the doctrines enunciated by Chief Justice Marshall, in the great case of *McCulloch v. The State of Maryland*, and latterly by express congressional legislation, specifically exempting United States securities from taxation; and so far as it is repugnant to the supreme law, it is inoperative. Applying the same principle, Section 4 is inoperative as regards the taxation of national banks, and we fall back upon the general provision of Section 3, under which laws may be passed to reach the *shares* of these associations.

We conclude, then, that the Constitution authorizes legislation for the purpose of taxing the shares in national banks. It remains to examine our laws in order to determine whether they furnish authority for the taxation sought to be imposed in the cases at bar. The provisions of law bearing upon the questions arising in these cases, are found in Chapter 1 of the laws of 1860, entitled " An act to provide for the assessment and taxation of all property in this State, and for levying taxes thereon according to its true value in money," and in an act amendatory thereof, being Chapter 1 of the laws of 1861. The first question to be considered is, do these laws authorize the taxation of the shares *eo nomine* of national banking associations. Section 1, Ch. 1, Laws of 1860, reads as follows : " That all property, whether real or personal, in this State, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, of *persons residing herein,*

the property of corporations now existing or hereafter created, and the property of all banks or banking companies now existing or hereafter created, and of all bankers *except such as is hereinafter expressly exempted*, shall be subject to taxation, and such property, moneys, credits, investments in bonds, joint stock companies, or otherwise, or the value thereof, shall be entered in the list of taxable property for that purpose, in manner prescribed by this act." By Section 2, as amended by the law of 1861, it is enacted that "the term 'investments in stocks,' wherever used in this act, shall be held to mean and include all moneys invested in the public stocks of this or any other State, or of the United States, or in any association, corporation, joint stock company, or otherwise, the stock or capital of which is or may be divided into shares which are transferable by each owner without the consent of the other partners or stockholders, *for the taxation of which no special provision is made by this act, held by persons residing in this State*, either for themselves, or as guardians, trustees or agents." The same section further provides that "the term 'personal property' wherever used in this act shall be held to mean and include," among other things not important here, "the capital stock, undivided profits, and all other means, not forming part of the capital stock of every company, whether incorporated or unincorporated, and every share, portion or interest in such stocks, profits or means, by whatsoever name the same may be designated," &c., &c., the balance of the definition not applying to this case.

A careful examination of the different species of property subject to taxation by the laws referred to, will show that the shares in national banks must be included, if at all, in "investments in stocks," and in "personal property," as thus defined in the statutes, unless they fall within the exception found in section 2, of moneys invested in stocks or shares, for the taxation of which special provision is made in the tax act, and it will also be observed from the reading of sections

1, 4, 6, 7, 8, 16, 17, 18, 19, 20, 42, 43, 54, 55, 56, 57, 60, 65, that the general theory of our system of taxation is, that all taxable personal property is to be *listed* for taxation. The list is the basis upon which the assessment rests. In all cases it is made the special duty of some designated person to make and return the list, and it is only upon the list required to be made out and returned that taxes can be assessed, unless in cases of neglect or refusal to list, which does not affect the general principle. If there be any species of personal property which no person is required to list and return, it escapes taxation. If there be any species of property which is required to be listed and returned in such form that its taxation is impracticable, under the national banking act, or any other law of the United States, such species of property also escapes taxation. And by section 43 of the act of 1860, the county auditor is to assess the taxes in the name of each person, company or corporation listing the personal property. The auditor of State performs a similar duty in regard to banks incorporated by the laws of this State. (See section 62, laws of 1860, as amended by section 19, laws of 1861.) To return, and apply these provisions of law by which the listing is regulated, it becomes important to ascertain who is required to list shares of national banks, and if it turns out that no person is required to list them, it follows that no person is required to pay taxes on them. It is clear that they are not required to be listed under sections 54, 55, 57 or 59 of the law of 1860, because those provisions relate only to banks incorporated or organized under the laws of the State, and these are the only provisions relating to the listing of banks by name. Are they required to be listed under the provision relating to bankers and brokers? Section 15, page 25, laws of 1861, amendatory of section 56, law of 1860, defines bankers and brokers as follows : " Every person who shall have money employed in the business of dealing in coin, notes, or bills of exchange, or in the business of dealing in

or buying, or shaving any kind of bills of exchange, checks, drafts, bank notes, promissory notes, bonds, or other writing obligatory, or stocks of any kind or description whatever, shall be held to be a banker, broker, or stock jobber; and in making out their statement for taxation as required by the 60th section of this act, shall include in his statement the average value estimated, as provided in the 54th and 55th section of this act, and of all moneys, notes, bills of exchange, bonds, stocks, or other property appertaining to his business. as a banker, broker, or stock jobber, which he shall have had, etc., etc."

It is to be observed that no attempt was made in the cases at bar to comply with the provisions of law relating to "bankers and brokers." The assessment here was made by the *assessor*, while bankers and brokers make their return under section 17, page 26, laws 1861, to the county auditor, who enters the property returned for taxation. Nor was the assessment attempted to be made upon any statement such as is required of bankers and brokers, but upon *shares* in the hands of *individuals*. If the stockholders could be regarded as bankers or brokers, or rather if the bank was regarded as a banker or broker, then by section 4 of the tax law of 1860, as amended on page 18, laws 1861, the property "of every company, firm, body politic or corporation," is required to be listed "by the president or principal accounting officer, partner or agent thereof." The same rule is recognized in section 62, as amended on page 27, laws 1861. But we are of opinion that neither the bank nor the shareholders could be required to list as bankers or brokers under our laws, since, as we have seen, the only tax which can be imposed upon the property employed in banking in national banks, is a tax upon *shares*. The statutory provision as to the listing by bankers and brokers, and the taxation of the listed property, could not apply here.

We have next to consider whether these shares are required to be listed under section 16, of the law of 1860, which is as follows : " The president, secretary, or principal accounting officer of every canal, or slack water navigation company * * * * telegraph company, or *other joint stock company, except banking, or other corporations,* whose taxation *is specifically provided for in this act,* for whatever purpose they may have been created, whether incorporated by any law of this State or not, shall *list for taxation* * * * all the personal property, * * * moneys and assets of such company or corporation within the State, at the actual value in money, etc., etc."

This section also requires the return to be made to the *county auditor,* and does not contemplate an assessment by the assessor.  We are of opinion that neither the national banks nor their shareholders are bankers or brokers within the meaning of our statute, but that the bank is a "joint stock company," within the meaning of section 16, just cited, and a joint stock company not included in the exception (found in Sec. 16) of banking and other corporations, whose taxation is specially provided for in the tax laws.  If this be so, it follows that the shares in national banks are not required to be listed by, nor taxed to the individual shareholders, but are to be listed, if at all, (under Sec. 16, as well as Sec. 4,) by the president, secretary, or principal accounting officer of the joint stock company, which is the banking association, and taxed, (if at all,) accordingly.  It also follows that these shares are not "investments in stocks," within the statutory definition which the individual is required to list, because *special provision is made for their taxation in another way.*  See Sec. 2, page 14, Laws 1861, before cited.

Concisely stated, our conclusions are, that the shares of national banks must be taxed *eo nomine;* that they cannot be taxed under the statutory provisions relating to banks, to bankers and brokers, to joint stock companies, or to individ-

uals, and therefore they cannot be taxed at all in the present state of our laws.   As the question of the right to tax the shares of national banks is one of great public importance, we shall proceed to state our views upon some other matters that were presented at bar.   The 41st section of the national banking act contains a proviso (already quoted) as follows: "*Provided further*, that the tax so imposed under the laws of any State, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where such association is located."   We are inclined to hold that this does not require that the tax imposed upon the State banks must be a tax upon the *shares* of the State banks *eo nomine*.   At any rate the design of this proviso being to prevent unfriendly discrimination, the taxation upon the State banks must at the very least, be an *equivalent* for the tax upon the *shares* in national banks.   A tax upon the capital stock of a State bank, when the capital consists in part of United States bonds, would be obnoxious to the objection stated in Bank Tax Case, 2 Wallace, 200, and clearly would not furnish the necessary equivalent.   A tax upon the business of the bank as upon loans and discounts, might or might not be equivalent in rate to a tax upon the shares; depending as it would, upon the activity of business operations, it would furnish a standard uncertain and varying.   According to the reasoning of Justice Nelson in *Van Allen v. The Assessors*, a tax upon all the shares is not a tax upon the capital stock.

We feel some hesitation in adopting this view, which was only one of the grounds upon which the determination of that case rested; however, if the distinction taken between a tax upon all the shares and upon the capital stock be sound, there would seem to be no difficulty in taxing all the shares in the State banks, whether the capital was invested in United States securities or not, and in this way securing exact equivalence. In the present condition of our laws, as there is no provision

County Treasurer v. Webb and Harrison.

for taxing all the shares in State banks, either *eo nomine* to the holders, or in effect, by taxing the whole capital stock and property of the bank as the aggregate of the shares, whether the capital be composed in whole or in part of federal securities, it is clear that for this reason, if for no other, we are precluded from taxing the shares to which this action relates.

We are also of opinion that the distinction as to the taxation of "personal property" and "investments in stock," between persons residing and not residing in the State, if applied to shares of State banks, would be fatal to the equivalence before spoken of. In such case, if the share holders in a State bank were all non-residents, the shares might escape taxation altogether, and thus discrimination against national banks prevail in its worst form. The 41st section further provides that the shares of national banks must be taxed in the town or ward where such banking association is located, and not elsewhere.

Section 4 of the tax law of 1860, as amended on page 18 of Laws of 1861, provides that " all real property, and merchants' and manufacturers' stock, and all the articles enumerated in the seventh section of this act, and all personal property upon farms, and real property not in towns, shall be returned for taxation and taxed in the townships and towns in which it is situated; and *all other personal property* shall be entered for taxation in the township and town in which the person charged with the tax thereon resided at the time the list thereof was taken by the assessor, if such person reside in the county where such property was listed, and if not, then such property shall be entered for taxation and taxed in the township where situated when listed, anything in this act to the contrary notwithstanding."

Leaving out of view the objection as to listing, which we have already considered, the question now is:

Do our State laws permit the taxation of these national bank shares at the place where the bank is located ? It is

vol. xi.—33

conceded that personal property of the nature of bank shares ordinarily follows the *situs* of the owner—that it is situated where the owner is situated.    But it is claimed that this is an artificial rule, and that while our statute requires "all other personal property," including shares in national banks, to be taxed *where situated*, it does not expressly point out the place where property of the intangible nature of bank shares is to be deemed situated.    It is, however, conceded that under the ordinary rule "this description of property, in the absence of statutory provisions, would be deemed to be situated where the owner resided," but it was added that "there was nothing to prevent Congress from assigning to these shares of stock a *situs* for the purpose of taxation.    And it is claimed that the effect of the act of Congress has been to "impress" the *situs* of the bank upon the shares, and the conclusion sought to be drawn is, that the terms "where situated" in our State tax law are to be taken as equivalent to the language "where situated for the purpose of taxation under the law of Congress." We do not agree to this.    Our law providing that property of this description is to be taxed "where situated," and being silent as to the definition of these words, by implication adopts the ordinary rule before referred to, that personal property of the nature of bank shares follows the *situs* of the owner; and before a different *situs*, namely that of the bank, can be impressed upon the shares for the purpose of "*a tax imposed by or under the law of any State*," our statute must be conformed to the act of Congress.

So far as Harrison is concerned, who resides at Minneapolis, while the bank is located at St. Paul, the objection as to the place of taxation would be *fatal* to the tax sought to be collected of him.    It appears that Webb's shares were *entered* by the County Auditor as an item separate from his personal property, and a separate tax against such shares carried out in the column opposite.    We see no substantial error in this respect.

It will be seen, then, that upon several grounds we arrive at the conclusion that the order and judgment of the court below, dismissing the proceedings to enforce the collection of the taxes upon the shares of these national banks must be affirmed.

We learn that the question as to the right of the States to tax shares of national banks is to be re-argued, and considered anew in the Supreme Court of the United States; but as important interests require an early determination of the cases at bar, we have thought best not to delay longer, although aware that the possible rejection of the doctrines announced in *Van Allen v. The Assessors*, and the denial of the right to impose State taxation upon shares in national banks would render any examination of our local Constitution and laws unnecessary. The last clause of Sec. 4, p. 156 of the General Statutes, (Revision of 1866,) relating to taxation of shares in national banks alluded to upon the argument, can have no application to taxes levied before the passage. We do not, therefore, consider it specifically, though the question as to its validity may be indirectly disposed of in the views herein expressed.