# APPENDIX.

## VAN SLYKE VS. THE STATE.

### *Taxation of National Banks.*

1. Under the national banking act, a state may tax the shares of national banks therein located, although it does not tax *eo nomine* the *shares* of banks organized under its own authority, but only their *capital ;* provided such tax is a full *equivalent* for that imposed on the national banks.
2. The tax imposed upon the capital of banks organized under the banking law of this state, prior to the amendment of 1866, was annexed to the franchise as a royalty ; and that part of their capital which consisted of U. S. bonds was subject thereto.
3. Such tax was a full equivalent for that imposed upon the shares of the national banks by chap. 400, Laws of 1865.
4. In an action to recover back moneys paid as taxes on the shares of a national bank located in this state (under said chap. 400), it will be presumed (upon demurrer to the complaint) that the assessment upon the shares was *not* at a greater rate than that assessed upon other moneyed capital in the hands of individuals, unless the contrary is averred in the complaint.
5. Said chap. 400 is not invalid as being in conflict with sec. 1, art. VIII of the constitution of this state, which requires that the "rule of taxation shall be uniform."

On the 23d of May, 1867, *Van Slyke* filed in this court his complaint, which alleges in substance the following facts: On the 1st of May, 1865, at, etc., the First National Bank of Madison was a banking corporation duly organized and existing under the several acts of congress concerning national banks, with a capital stock of $50,000, divided into 500 shares of $100 each, then and still owned in certain specified amounts by the

several persons named in the complaint, of whom the plaintiff is one. *Van Slyke* then was and continues to be president of said bank, etc., which then was and still continues to be located and doing business at Madison. In October, 1865, the assessor of the city of Madison returned to and filed with the clerk of the board of supervisors of Dane county (in which said city of Madison is situate) a return of the holders of the shares of stock in said bank, and the amount and number of the shares held by each of them; and said clerk forwarded a copy of said return, officially certified by him, to the state treasurer, who assessed upon each of said shares a tax of one and a half per cent. (being $1.50 on each share, and $750 on the entire amount), and notified the several shareholders, and the bank as their agent, of such assessment, and that payment would be required under chapter 400, Laws of 1865, and that, unless the taxes so assessed should be paid, he should proceed to enforce the lien which he claimed to have as such treasurer upon said shares, by a sale of the same, and to enforce and execute all the provisions of said act.* In order to save said shares from sale,

---

* Section 3 of chapter 400, Laws of 1865, provides that, in case the tax on stock in any banking association in this state, created by authority of any law of the United States, shall remain unpaid until the 1st day of February *after* the year for which it is due, "it shall be the duty of the state treasurer, without unnecessary delay, to give notice of such non-payment, and that in consequence thereof he will sell the share or shares, * * at public auction, at his office," etc. Section 4 provides that if said tax shall not be paid on or before the 31st day of December in the year for which it is due, "a penalty of one per centum on the amount of the stock shall be added thereto, and if such tax and penalty, together with the costs and charges, shall not be previously paid to the state treasurer, the shares of stock delinquent shall be sold by the state treasurer, according to the terms of the notice of sale aforesaid," etc. Section 7 provides that, "whenever the tax assessed upon other moneyed capital in the hands of individual citizens of the state shall be less than one and one-half per centum, it shall be the duty of the state treasurer to reduce correspondingly the tax upon the stock of said banking associations, and to require the payment only of such reduced tax."

and prevent the injury to the credit of the bank which would result, etc., etc., the stockholders were forced to pay, and, on the 9th of December, 1865, did pay, under protest, to the state treasurer said taxes, and the money was received and retained by the state by its treasurer to its use, etc., whereby it became indebted to the several shareholders, etc. Afterward the other shareholders assigned their shares to *Van Slyke.*

Demurrer to the complaint for insufficiency.

*Gregory & Pinney,* for plaintiff:

State banks cannot be taxed upon their capital invested in United States bonds. *Bank of Commerce v. New York City,* 2 Black, 620; *Bank Tax Case,* 2 Wallace, 200. A tax of one and a half per cent. on the *capital stock* of a state bank would not be equivalent to a tax at the same rate upon the *shares* of stockholders in the national banks. *Van Allen v. The Assessor,* 3 Wallace, 573; *Bradley v. The People,* 4 id. 459; *People v. The Commissioners,* id. 244; *Wright v. Stilz,* 27 Ind. 338; *Frazer v. Seibern,* 16 Ohio St. 614; *Markoe v. Hartranft,* Am. Law Reg., June, 1867, p. 184. The act under which this tax was levied, therefore, violated the rule prescribed by the act of Congress. It also violates the rule of uniformity prescribed by section 1, article 8 of our state constitution. *Knowlton v. Supervisors,* 9 Wis. 410; *Attorney General v. Plank Road Co.,* 11 id. 35. From the statutes and these decisions we derive the following conclusions in reference to state and national banks having their capital stock invested in government securities which are exempt from taxation. (1) A state bank cannot be taxed as a corporation upon its capital stock so far as it is invested in such securities. (2) A national bank cannot be taxed as a corporation, upon its capital stock. (3) In a state where the statute provides for a tax upon the capital stock of the state banks, the shareholders of national banks cannot be taxed upon their individual shares. (4) Under a proper state law, shareholders in both the state and national banks

may be taxed upon an equal valuation of their shares, without making any discount or allowance for the amount of the investments of such banks in government securities exempt from taxation. 2. The tax being unlawful, plaintiff is entitled to recover back the moneys paid. It should be noted that goods seized under a tax are not repleviable; that no warrant or process was necessary to enable the state treasurer to proceed; that there was no way to avoid the consequences of his acts, or defend against them before any tribunal. Even if an injunction might have been obtained against his acts, this is no reason why a court of law should not redress the wrong when committed. But an injunction would not be granted to restrain the collection of a tax assessed on personal property. *Van Cott v. Supervisors*, 18 Wis. 247; *Ch. & N. W. R. R. Co. v. Ft. Howard*, 21 id. 44; *Peck v. School District*, id. 516. The case was one of duress. See *Preston v. Boston*, 12 Pick. 7; *Amesbury Manuf. Co. v. Amesbury*, 17 Mass. 461; *George v. Mendon*, 6 Met. 506; *Boston, etc., Glass Co. v. Boston*, 4 id. 187; 3 Smith's L. C. 464; *Steele v. Williams*, 8 Exch. 625; *Ripley v. Gelston*, 9 Johns. 201; *Close v. Phipps*, 49 Eng. C. L. 586; *Hathaway v. Addison*, 48 Me. 440; *Lima v. Jenks*, 20 Ind. 301; *Claflin v. McDonough*, 33 Mo. 415; *Mays v. Cincinnati*, 1 Ohio St. 278; *Marietta v. Slocomb*, 6 id. 471. The money which was paid to the state it has no right, in equity and good conscience, to retain. *Sumner v. Dorchester*, 4 Pick. 364. Nor is there any legal ground for saying that in equity and good conscience plaintiff ought not to recover the money, as it was only a payment of a sum which ought to have been paid, and was only their due proportion of the whole amount which ought to have been paid, and which might have been assessed had there been proper and valid legislation on the subject. Every citizen has a right to insist, not only that no more than his proportional share be demanded of him, but that the assessment be in a legal form, and one that will compel others

similarly situated to pay their proportionate share of the public burden. *Joyner v. School District*, 3 Cush. 572.

*The Attorney General*, for the state, to the point that the moneys paid by plaintiff could not be recovered, even if their payment could not have been enforced, cited 1 Parsons on Cont. 394, 395, and notes; *Oates v. Hudson*, 5 Eng. L. and E. 469, and cases cited in note; 6 Exch. 346, and cases cited in note; *Fleetwood v. City of New York*, 2 Sandf. S. C. 475; *Mayor, etc., v. Lefferman*, 4 Gill, 425; *Sheldon v. School Dist.*, 24 Conn. 88; *Brisbane v. Dacres*, 5 Taunt. 144. 2. The state cannot be charged with duress. 3. There could be no duress in this case. The treasurer did not ever threaten to take *possession* of any property, nor did the law authorize him to do so. The shares were not subject to seizure. The treasurer's acts could not affect either the possessor or the title, if the law was invalid. 4. Such a claim is not assignable. The plea of duress is a personal privilege.

*P. L. Spooner*, of counsel, on the same side, argued that the tax of one and a half per cent. imposed by law on the *capital stock* of the state banks was an exact equivalent for the tax of one and a half per cent. on the *shares* of the national banks, *at par*, unless that part of the stock of state banks which is made up of United States securities is exempt from taxation; and that it was not so exempt, by reason of the laws of the United States exempting its securities from taxation, because the tax upon the banks is only a royalty for the grant of their franchises. 2 Black, 620. To the point that " the equivalent taxation necessary to justify a tax upon the shares in the national banks may be * * upon the *capital* of the bank, and assessed against the bank itself," they cited 16 Ohio St. 614; *Van Allen v. The Assessors*, 3 Wallace, 573; *Bradley v. The People*, 39 Ill. 130. 2. Chapter 400, Laws of 1865, is not in conflict with section 1, article 8 of the state constitution, which requires that " the rule of taxation shall be uniform." (1) So far as

the rules prescribed by congress differ from that prescribed by the state constitution, the latter must yield (*Bradley v. The People*, 4 Wall. 459), or the power cannot be exercised. (2) The framers of the constitution could not have intended to subject the legislature, in such an exigency, to two opposite wills—that of congress directing one rule, and that of the constitution another; nor could they have intended that a beneficent power should fail of exercise because the legislature could not obey contradictory injunctions. (3) The constitutional injunction had reference only to the ordinary exercise of the taxing power "upon such property as the legislature shall prescribe," where the legislature would have ability to follow a uniform rule, and not to a case in which a power superior to the constitution of the state or its people, should prescribe its own rule of taxation. (4) What the framers of the constitution had in view was the taxing power which resides in the state as a sovereign; and the object of the injunction referred to was equality in the distribution of the public burdens. But the shareholders in the national banks do not pay taxes on their shares by virtue of any duty which they owe the state as a sovereign. They receive their franchises from congress, and the tax is the price of the grant. To apply the constitutional rule in this case would exempt the shares of the national banks from taxation by this state, because they cannot be made to pay as much as other moneyed capital pays, and so far defeat rather than promote the equality which it was the design of the rule to ensure. (5) Counsel further argued, that the shareholders in the national banks, by becoming such, had *consented* to taxation by the state, limited only by the two conditions imposed by the act of congress; and they could not in good faith take the objection to it now under consideration. 3. To the point that the present action could not be maintained on the ground that the tax on the shares in the plaintiff's bank *might* exceed that levied on other forms of moneyed capital in the city of

Madison, but that the complaint must allege that the tax on the plaintiff *did* exceed that upon other moneyed capital in fact, counsel cited 14 Wis. 246, 618; 15 id. 9; 7 Ohio St. 50; 16 id. 271. 4. No case is cited where payment of a tax to prevent a sale of shares or stock in a corporation has been held *compulsory.* Shares are not capable of *seizure* or manual possession. If the tax was unauthorized, an attempted sale of the shares by the state treasurer would have been an idle ceremony. *Mowry v. Wood,* 12 Wis. 413. There was full opportunity for the shareholder to litigate the question of right before he paid his money. It is not clear that hé could not have enjoined a sale by the treasurer. 18 Eng. Ch. 255; 11 Md. 302, cited in Am. Law. Reg., June, 1867, p. 493. He would have enjoined a transfer of the shares on the books of the bank, and in various ways could have vindicated his right to vote the stock and receive the dividends. *Osborn v. U. S. Bank,* 9 Wheat. 845; 38 Pa. St. 313. It is conceded that one cannot recover back money paid to prevent a threatened sale of *land;* why of *stock?* An illegal sale does not in either case affect title or possession.

DIXON, C. J. The first question to be considered is, whether the 41st section of the national banking act, authorizing taxation by the states of shares in the national banks, requires that the tax imposed by the state upon the state banks shall be, *eo nomine,* a tax upon the *shares* of those banks. Taxation by state authority of national banks must be upon the *shares,* because the law of congress so expressly provides. Must the tax imposed by the state upon the state banks be also upon the shares in those banks, before the state can lawfully exercise the power conferred by congress to tax the shares in the national banks? This is a question as to the proper construction of the 41st section, above referred to, and one which must be ultimately answered by the supreme court of the United

States. It is a question which lies at the very foundation of the proceedings we are required to investigate. If the state banks *must* be taxed upon the shares, and in no other way, in order to justify the levying of a tax by the state upon the shares in the national banks, that is decisive of this case, and not of this case only, but of every other case arising under our banking law, as it stood prior to its amendment, by act of the legislature and vote of the people in 1866, so as to require the payment of taxes upon the shares in the state banks, instead of taxes upon the amount of capital stock of such banks, as theretofore provided by law. Is such the true construction of the section in question? If it is, then it will readily be seen, that in many of the states, and in this state in particular, the just and beneficent designs of congress in authorizing the states to tax the shares in the national banks, were, for a considerable period of time at least, to be defeated by the very terms of the act by which the authority was granted. It will hardly be contended that such was the intention of congress. The intention clearly was, that the property or capital of citizens thus employed should be subject to the same, but not to a *greater* rate of taxation than is imposed by the state upon the property or capital of the citizens devoted to other purposes, and which is not especially exempt from taxation. It would not, perhaps, be strictly accurate to say that this question of the proper construction of the law of congress, has been directly adjudicated by the supreme court of the United States. It has been supposed by some, however, to have received a practical exposition in that court, which is to the effect that the tax imposed by the state upon the state banks, need not necessarily be upon the shares in order to justify the levying of a tax upon the shares in the national banks. Such is the opinion of the supreme court of the state of Ohio, in *Frazer v. Seibern*, 16 Ohio St. 620, 621. After referring to the cases of *Van Allen v. The Assessors*, 3 Wallace, 244, that

court says : " It must be premised that in the cases referred to, the supreme court of the United States have put a more liberal construction upon the word ' shares,' as here used, in favor of the power to tax, than they have upon the same word when designating shares in the national banks. That court holds that the equivalent taxation necessary to justify a tax upon the shares in national banks, may either be upon the *shares* of the individual stockholders in the state banks, and assessed against the stockholders, or it may be upon the capital of the bank, and assessed against the bank itself; provided, only, that it be a *full equivalent.* The tax against the owner of shares in the national banks, must not exceed that imposed, in some form, upon the state banks or their stockholders." To the same effect is the opinion of the supreme court of Minnesota, in the case of *County Treasurer v. Webb and Harrison,* 11 Minn. 512. On the other hand, the supreme court of Iowa, in the recent case of *Hubbard v. Supervisors of Johnson Co.,* and other cases decided at the same time, seems to have arrived at directly the opposite conclusion ; and so the reporter states the point decided in *Bradley v. The People,* 4 Wallace, 459.

The words of the act upon which this conflict of opinion has arisen, are found in the second proviso of the 41st section, which reads as follows : " *Provided further,* that the tax so imposed under the laws of any state upon the shares of any of the associations authorized by this act shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the state where such association is located." The object of this proviso is apparent. It is a limitation of the general power previously conferred, intended to secure the national banks against any discrimination unfriendly to them and in favor of the state banks, in matters of state taxation. Such security being easily attained without any change by congress of the mode of taxing the state banks by the state, and the same being fully provided, it seems somewhat inconsistent

with the language of the proviso, that it should be held to have still further effect, and that congress has prescribed a mode by which the state banks must be taxed. If such had been the intention of congress, language adapted to that purpose would no doubt have been used, and the proviso would have read something like this: "*Provided further*, that the banks organized under authority of the state where such association is located shall be taxed upon the shares in such banks, and that the tax imposed under the laws of any state upon the shares of any of the associations authorized by this act shall not exceed the rate imposed by the same state upon the shares of any of the state banks." It is furthermore to be considered, that the mode of taxing the state banks by the states is not a matter of national concern, only so far as it may infringe the rule of taxation prescribed by congress for the national banks. Within that rule the states may well be at liberty to tax their own banks as they see fit; and I cannot but think it was the intention of congress not to interfere with them. I think, therefore, that the word "shares," as here used with reference to the state banks, may well receive a more liberal construction than the same word when elsewhere employed to designate the shares of the national banks as being the proper subjects of state taxation. In the one case it is used to specify the particular property which may be taxed; in the other, not for that purpose, but in a more general sense, in a clause intended only to limit the rate of such taxation.

Now, on turning to the decisions of the supreme court of the United States, I find this view greatly strengthened, if not fully supported, by them. The case of *Van Allen v. The Assessors*, may almost be said to be entirely decisive of the question. That case went up from the Court of Appeals of New York, upon the enabling act passed by that state in March, 1865, which taxed the state banks, not upon their shares, but upon their *capital*. By the same act, taxes at

the same rate were imposed upon the *shares* in the national banks, not exceeding their par value. The court held the act invalid, because the capital of the state banks might consist of the bonds of the United States, which were exempt from such taxation. "It is easy to see," say the court, "that this tax on the capital is not an *equivalent* for the tax on the shares of the stockholders." This was assuming in the clearest possible manner, that the act was not invalid because it taxed the state banks upon their capital and the national banks upon their shares, but that that mode of taxation was unobjectionable provided it was *equivalent*, or did not infringe the rule of equality established by congress. It is difficult to conceive why the court should have decided the case on this ground, if the other objection had really been supposed to exist; for, as I have said, it is an objection which goes to the foundation of the proceeding, and one which must have met the court at the very threshold. Again, the case of *Bradley v. The People* was decided on the same ground. Referring to *Van Allen v. The Assessors*, the court say, that "the tax in that case was attempted to be sustained on the same ground relied on here, that the tax on the capital was equivalent to a tax on the shares, as respected the shareholders. But the position was answered, that, admitting it to be so, yet, inasmuch as the capital of the state banks may consist of the bonds of the United States, which are exempt from state taxation, it was not easy to see that the tax was an equivalent to a tax on the shares." I find no other decision by that court, or opinion intimated, in conflict with the position assumed in these and other cases; and I therefore conclude that the states may lawfully tax the capital of their own banks and the shares in the national banks, provided such taxation be not unequal, or so imposed as to discriminate in favor of the state banks and against the national banks.

Having arrived at this conclusion, the next point of inquiry

is, whether the tax of one and one-half per cent imposed by the law of this state upon the capital of the state banks was in all cases equivalent to the tax of the same rate assessed upon the shares in the national banks by the act of April 8, 1865. Laws of 1865, chap. 400. It is not denied that taxes thus imposed are or would be equivalent, provided no part of the capital of the state banks was exempt from taxation; but as the capital of the state banks may, under our banking law, consist of the bonds of the United States not liable to state taxation, it is insisted that the same objection existed here that existed in New York and some other states, where the question has arisen. To this it is answered, that our banking law differed from that of New York and the others in this, that the tax imposed on the capital of our state banks was a tax annexed to the franchise as a royalty for the grant, and consequently one which the banks must pay, even though the securities deposited did consist of stocks of the United States otherwise exempt from taxation. This position was sanctioned by the supreme court in *Bank of Commerce v. New York City*, 2 Black, 628, and is undoubtedly correct. The banks of this state were taxed, not upon valuation like the property of individuals, but on the amount of the nominal capital, without regard to loss or depreciation. R. S., chap. 71, § 20. The sum thus exacted by the state was one of the conditions upon which the franchise was granted, and as such was not in conflict with any right of the federal government.

It only remains to be considered, whether the act of April 8th is in conflict with the first proviso of the 41st section, or with our own constitution. The material words of that proviso are, that the shares of the national banks shall be taxed "not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." It is provided by section 3 of the act of April 8th, that the shares in the national banks shall be taxed on the *par*

value. The seventh section provides that whenever the tax assessed upon other moneyed capital in the hands of individual citizens of the state, shall be less than one and one-half per centum, it shall be the duty of the state treasurer to reduce correspondingly the tax upon the stock of said banking associations, and to require the payment only of such reduced tax. As suggested by counsel for the state, the only particular of this legislation which seems liable to any objection is, that the shares in the national banks are required to be taxed at their par value. If the shares in any national bank should at any time be worth less than *par*, then the tax upon them at par might exceed the rate imposed upon other moneyed capital which is taxed at its real value. As suggested by counsel, also, this objection, if it exists, might be easily removed by providing that the shares in the national banks shall be assessed at their value, *never, however, above par*. But this is an objection which does not arise in the present case. This is an equitable action in the nature of an action for money had and received, brought against the state to recover back money paid for taxes upon the shares in the First National Bank of Madison. In such a case the plaintiff must show that he is entitled in equity to recover back the money demanded. It is not enough to show that the proceedings to levy and collect the taxes were technically defective at law. The complaint does not allege that the shares in this bank were worth less than par. Neither does it allege that the assessment upon the shares was at a greater rate than was assessed upon other moneyed capital in the hands of individuals. In the absence of such averments, the court cannot presume such facts to have existed, but must presume the contrary. The complaint, therefore, in this respect, fails to state a cause of action.

As to the act being in conflict with the clause in our state constitution, prescribing a uniform rule of taxation, I have only this to say : that it is provided by the constitution of

the United States, that that constitution, " and the laws of the United States made in pursuance thereof,    *    *    *    shall be the supreme law of the land, and the judges of every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." If congress, in the exercise of its supreme authority, has prescribed a rule or mode of taxation differing from that prescribed by the constitution of any state, the legislature of the state must be governed by the rule prescribed by congress, instead of that fixed by the constitution of the state. See *County Treasurer v. Webb and Harrison*, 11 Minn: 506. I think, also, that there is great force in the argument of counsel, that the provision of our state constitution is inapplicable to this new species of property, which has been called into existence by the superior power of the federal government.

In my judgment, the demurrer to the complaint should be sustained.

*By the Court.*—Demurrer sustained.

PAINE, J., did not sit in this case, having been of counsel.

The plaintiff moved for a rehearing, on the ground (among others), that the decision of the court did not dispose of all the questions raised by the pleadings, and upon which a decision would be desired on error to the supreme court of the United States. The motion was denied.