Simmons vs. Aldrich.

SIMMONS VS. ALDRICH.

*(1) Lien of taxes upon stock of national banks. (2, 3) Damages for sale of stock falsely represented as free from such lien.*

1. The taxes for 1865 and 1866, imposed upon the stock of a national bank in this state pursuant to ch. 400 of 1865, became a lien upon the shares taxed, and such lien continued until the taxes were paid.
2. S., in 1871, purchased from A. stock of a national bank in this state, upon the faith of A.'s representation that all facts affecting the value of such stock were set forth in a written statement submitted by A. The state tax upon the stock of said bank for 1865 and 1866 had not been paid, and this fact was known to A., but did not appear in said statement. The amount of said taxes, being still uncollected, was paid by the bank in 1872, pursuant to ch. 23, Gen. Laws of 1872. *Held,* that A. is liable to S. in damages as for fraudulent representations, to the amount of such taxes on the stock sold to S., with interest.
3. The question whether the legislation of this state, subsequent to 1865,

touching unpaid taxes on national bank stock, was effectual to accomplish its purpose, is immaterial; the taxes having been a lien on the stock at the time of the sale, and having been paid pursuant to law. *Peters v. Myers*, 22 Wis., 574.

APPEAL from the Circuit Court for *Kenosha* County.

In 1871 the plaintiff purchased of the defendant a large amount of the stock of the First National Bank of Kenosha. Before making such purchase, he required the defendant to furnish a statement of everything affecting the value of such stock; and the latter delivered to him a writing or schedule purporting to be such a statement, but no reference was made therein to the fact, of which the plaintiff was ignorant, that the taxes on such stock for the years 1865 and 1866, imposed under and by virtue of ch. 400, Laws of 1865, had never been paid.

The plaintiff subsequently paid such taxes, or, what is the same thing, they were paid by the bank, pursuant to ch. 23, Laws of 1872, to the amount of $753.

This action was brought to recover damages for the alleged fraudulent concealment by the defendant of the fact that the taxes were unpaid. The cause was tried by the court without a jury, and afterwards the judge filed his findings of fact as follows:

"1st. That the First National Bank of Kenosha is, and at all the times named in the complaint was, a corporation duly organized, existing and doing business in the city of Kenosha, under and by virtue of the act of congress, in manner and form as set forth in the complaint herein."

(The complaint avers that the bank was organized March 8, 1864, under the act of congress. It was stated on the argument, and not denied, that there is a clerical error in the date, which should be 1865 instead of 1864. Such is doubtless the fact.)

"2d. That on or about the 23d day of January, 1871, the defendant offered to sell, and did sell, to the plaintiff two hun-

dred and fifty-one shares of the capital stock of said bank, representing a par value of one hundred dollars per share, at and for the sum of twenty-two thousand dollars.

" 3d. That prior to said sale, and as one of the inducements thereto, at the special instance and request of the plaintiff, the defendant caused to be prepared a schedule purporting to show the assets and liabilities of the said bank, the condition and value of said assets, the amount of taxes unpaid upon said stock, and all other facts having a bearing upon the value of such stock.

" 4th. That the defendant, prior to said sale, did represent to the plaintiff that the said schedule contained and comprehended all the facts affecting the value of the said stock, known to the defendant.

" 5th. That the plaintiff relied upon such statements and representations of the defendant, in making said purchase of stock.

" 6th. That at the time of said sale, the state taxes for the years 1865 and 1866 upon said stock had not been paid, and said stock was subject to the lien of such unpaid taxes for said two years, being one and one-half per cent. on the par value of said stock for each of said years.

" 7th. That in the year 1867, by virtue of the statute in such case made and provided, and by virtue of the directions of the state treasurer of the state of Wisconsin, the treasurer of the city of Kenosha did spread out upon the tax roll of that city for the year 1867, then in his hands as such treasurer, the names of the defendant and the other stockholders in said bank, the par value of the shares owned by each of them, together with the amount of tax due thereon for the years 1865 and 1866, being one and one-half per cent. on the par value of such shares for each of said years; and that the entire amount of the capital stock of said bank, to wit, $50,-000, was so entered upon said tax roll as subject to said delinquent taxes for said years 1865 and 1866.

" 8th. That during said year 1867, and while the said tax roll was in the hands of said collector, he (said treasurer of the city of Kenosha) made personal demand upon the defendant for the payment of said delinquent taxes upon said shares of stock then owned by the defendant, which payment was refused.

" 9th. That during the year 1867, the defendant was elected president of said bank, and so remained until about the 23d day of January, 1871; and that prior to the time of his election as president, said defendant had been a director in said bank.

" 10th. That at the time of said sale, the defendant well knew of the existence of said taxes for the years 1865 and 1866, and the amount of the same, and that they had not been paid, and were liens upon said stock.

" 11th. That at the time of said sale, and for some time thereafter, the plaintiff was entirely ignorant of the existence of said unpaid taxes.

" 12th. That said schedule so prepared by the direction of the defendant did not contain any mention of said unpaid taxes, or any part or portion thereof, nor did the defendant in any way make known to the plaintiff, before said sale, the existence of said unpaid taxes.

" 13th. That on or about the 15th day of March, 1872, pursuant to chapter 23 of the general laws of the year 1872, the said delinquent taxes for the said years 1865 and 1866, upon the whole capital stock of said bank, to wit, one and one-half per cent. upon the par value of said stock for each of said years, were duly paid to the treasurer of the state of Wisconsin by the said national bank, to wit, the sum of $1,500; and that the plaintiff owned the said two hundred and fifty-one shares of said stock at the time of such payment.

" 14th. That the said two hundred and fifty-one shares of said stock were at the time of said sale worth $753 less than represented by the defendant, by reason of the existence and nonpayment of said taxes for said years 1865 and 1866."

And as conclusion of law from these facts, the court held, "that the plaintiff is entitled to recover of the defendant the sum of $753, with interest thereon from the 15th day of March, 1872, as well as the costs of this action."

The averments of the complaint correspond substantially with the findings of fact.

Judgment for the plaintiff was entered pursuant to the conclusion of law above stated; and the defendant appealed therefrom.*

* Ch. 400, Laws of 1865, required " the assessor of any city, ward or town, in which any banking association, created by authority of any law of the United States, may be located, to include in the valuation of the personal property of any person or corporation, whether residing or located in or out of such city, town or ward, the shares of such banking association owned by such person or corporation," at their par value; and, on or before the 1st of December, to make a return of the shareholders and stock of such banking association (sec. 1); which return was to be delivered to the clerk of the board of supervisors in each county, and by him immediately certified and forwarded to the state treasurer (sec. 2). It further required every owner or holder of such shares, whether resident within or without the state, to pay to the state treasurer, on or before the 31st of December in each year, a tax for that year of one and one-half per cent. on the par value of such stock; declared that such tax *should be a lien upon such stock, from and after the 1st of July previous, until paid;* and provided for a sale of the stock by the state treasurer in case the tax thereon should remain unpaid (sec. 3). It further provided that said banking associations might pay to the state treasurer the amount of such tax on the shares of their respective stockholders, at·any time before said 31st of December (sec. 4); and that whenever the tax assessed upon other moneyed capital in the hands of individual citizens of the state, should be less than one and one-half per cent., the state treasurer should reduce correspondingly the tax upon such banking stock, and require payment only of the reduced tax.

Ch. 125, Laws of 1867, provided for the entry of the taxes due under the act of 1865, upon the shares of national banks for the years 1865 and 1866, and which remained unpaid, upon the tax rolls of the several towns, cities or villages in which such banks were located, for the year 1867, against the names of the several stockholders; and for the collection of such delinquent taxes by the town, city or village collectors, in the same manner as other personal taxes were collected. It further provided that the person against whom such tax was assessed, might pay the amount thereof to the state treasurer; and that upon presentation of his receipt therefor to the collector, the latter should note

For the appellant, a brief was filed by *Winsor & Winsor*, and the cause was argued orally by *C. H. Winsor*. After

upon the tax book that such taxes had been paid to the state treasurer. It also provided for collecting such tax by distress and sale of personal property other than such stock; required a return to be made to the state treasurer of such taxes as could not be thus collected; and directed that officer to collect such delinquent taxes by sale of the stock upon which the same had accrued.

Ch. 136, Laws of 1868, required the assessor of every city, ward or town in which a national bank was located, to include in the valuation of personal property for 1868, of any person resident or nonresident, the shares of such bank which were owned by such person at the time fixed by law for the assessment of personal property in each of the years for which the taxes on such shares remained unpaid, and to assess such shares at their true cash value at such time, provided that they should in no case be assessed more than their par value (sec. 2). It also required the clerk of the city, village or town in which any such bank was located, to set down on the assessment roll opposite the name of each owner of such shares, for each of said years, the same rate of tax which was in such year levied upon other moneyed capital in the hands of individual citizens of the state, in such city, ward, village or town, *provided*, that the rate should not exceed one and one-half per cent. upon the assessed value of such shares (sec. 5); and it provided for the collection of such taxes by distress and sale of personal property (sec. 6), or by action in the name of the state treasurer (sec. 7). It also provided that such banks might pay directly to the state treasurer the amount of taxes upon the shares of their respective shareholders, before the warrant for their collection was issued, and that upon exhibition of the state treasurer's receipt for such taxes, proceedings for the collection thereof should be suspended, and the collector should make return accordingly (sec. 12). It also repealed all acts and parts of acts conflicting with its provisions (sec. 15).

Acts relating to the same subject were passed in 1869 and 1870; but they do not seem to be important here.

Ch. 23 of 1872 provided that if any national bank in this state, within fifteen days after the passage of the act, should pay to the state treasurer taxes at the rate of one and one-half per cent. upon the par value of its stock or shares, for each of the years 1865 and 1866, in which said taxes had not already been paid, the state treasurer should give such bank a receipt in full for the taxes due therefrom to the state for the years aforesaid (sec. 1); and that the bank should have a lien upon each of such shares for the taxes so paid thereon, and might retain the same out of any dividend accrued or to accrue upon such share, and might refuse to transfer any such share upon its books until the tax so paid had been refunded to it, by the owner of such share, with interest, etc.

considering certain exceptions to the admission of testimony, and to the findings of fact, counsel argued substantially as follows: 1. In *Van Slyke v. The State*, 23 Wis., 655, it was decided that ch. 400, Laws of 1865, was valid; but in that case it was alleged and shown that in October, 1865, the assessor of the city of Madison made a return to the clerk of the board of supervisors of Dane county, who forwarded a certified copy to the state treasurer; and that the latter *assessed the tax* and notified the shareholders that he should enforce his lien. It was the assessment which gave him the lien. The levying of the tax belongs to the legislature, but the other steps necessary to its enforcement belong to other branches of the government. Blackw. T. T., 37. The assessment is the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follows it. Cooley on Tax., 259–60, and cases cited in note 2 on p. 259. In this case there was neither allegation nor proof of any assessment in 1865 or 1866. The law of 1867 (ch. 125) provided for no re assessment. The evidence is, that these taxes were demanded between January and March, 1867; but ch. 125, under which such demand was made, was not approved until April 10th. That act provides (sec. 3) that said taxes shall be collected by distress and sale of goods and chattels, and that the collector shall make a return under oath of the balance uncollected. It nowhere provides for a valuation, or that the party assessed can have a hearing. It does not provide that the rate of taxation on bank shares shall be the same as in the case of other moneyed capital in the hands of individual citizens of the state. All these statutes were done away with entirely, as to the taxes for 1865 and 1866, by ch. 136, Laws of 1868, which provided for an entire reassessment of the taxes of those years. Sec. 15 of that act repealed everything in conflict with it, and the act was an entirely new proceeding. Cooley on Tax., 232. It provided an entirely new method of levying and assessing taxes for those years, and gave new penalties

for nonpayment thereof. The repeal of the tax law before the tax is collected, puts an end to the tax itself, where no rights are reserved in the repealing act, and nothing therein indicates a contrary intent. Cooley on Tax., 14, and cases cited in note 3. This law of 1868 was a valid act. *Bagnall v. The State,* 25 Wis., 112, 120, 121.

*J. V. Quarles* for respondent:

1. The vendor of stock or any other chattel is bound to disclose to the purchaser every material fact in his knowledge. *Barber v. Kilbourn,* 16 Wis., 490. If there be any intentional concealment or suppression of material facts in the making of a contract, in cases where both parties have not equal access to the means of information, it will be deemed unfair dealing. 2 Kent's Com., 481; *Dresser v. Ainsworth,* 9 Barb., 619 ; *Brown v. Montgomery,* 20 N. Y., 287. But in this case the written statements and representations concerning the stock amount to a warranty that there were no liens or incumbrances upon it. 2. There was a breach of this warranty. The taxes upon this bank stock for 1865 and 1866 were a lien upon the stock under ch. 400, Laws of 1865. This was a valid act. *Van Slyke v. The State,* 23 Wis., 655; *Bagnall v. The State,* 25 id., 113. In the former case the court suggested that " if the shares in any national bank should at any time be worth less than par, then the tax upon them at par might exceed the rate imposed upon other moneyed capital," which would bring the act in conflict with the national banking act. The legislature thereupon, by ch. 136, Laws of 1868, provided for a reassessment of this tax upon the basis of actual value. It is contended that a reassessment of the tax on the stock here in question, for the years 1865 and 1866, pursuant to the act of 1868, was necessary in order to perpetuate the lien or preserve the validity of the tax itself. But it is neither alleged nor proven that the stock in question was at any time worth less than par. It must be assumed, therefore, that the taxes of those years

were valid and became a lien upon the stock. The act of 1868 was merely curative, and was not designed, and did not have the effect, to destroy any valid liens that actually attached under the act of 1865. Defendant was therefore legally and equitably bound to pay these taxes. Plaintiff found them resting on his title as an incumbrance, and had no defense to them. While he owned the stock, the bank paid such delinquent taxes, pursuant to ch. 23, Laws of 1872; and it has been held competent to require payment of the corporation. *National Bank v. Commonwealth*, 9 Wall., 353; *Lionberger v. Rouse*, id., 468. It follows that the stock, when purchased by the plaintiff, was worth $753 less than it would have been if defendant's representations had been true. 3. Even if these taxes had been improperly levied, and so defective as not to be collectible, still they would constitute a cloud upon the title, unless they were so vicious that they had no semblance of legality. Cooley on Tax., 542–3; Blackw. T. T., 163. Whatever may have been the exact legal status of these taxes in 1871, they were certainly valid and continuing obligations against the defendant, and were liable to be revived as liens by subsequent legislation, even as against *bona fide* purchasers. Laches cannot be imputed to the state, and delay in taking these subsequent steps would not extinguish the liability. Cooley on Tax., 306. In *Tallman v. Janesville*, 17 Wis., 71, and *Cross v. Milwaukee*, 19 id., 509, this court says that the purchaser might have protected himself against a future reassessment. But there the original taxes had been adjudged void by this court, which the purchaser was presumed to know; and the taxes could not have been paid without making such payment a matter of record in the county where the lands were situate. In this case the original taxes had been declared valid, and there were no records accessible which would disclose whether they had been paid or not, the acts relating to this bank tax all providing for payment directly to the state treasurer.

LYON, J. We are satisfied that there was no error in the rulings of the court upon objections to the admission of testimony, or, at least, none which could possibly prejudice the defendant, and that the findings of fact are sustained by the evidence.

The act of 1865, ch. 400, which imposed the taxes in question, is a valid law. It was so held by this court in *Van Slyke v. The State*, 23 Wis., 655, and in *Bagnall v. The State*, 25 id., 112; and this ruling has been affirmed by the supreme court of the United States. That law makes the taxes which it imposes a lien upon the shares of stock taxed (sec. 2); and we are not aware of any subsequent legislation which removed such lien.

Hence, when the plaintiff purchased the stock, it was subject to a lien for the unpaid taxes, and remained subject thereto until they were paid pursuant to ch. 23, Laws of 1872. It requires but little evidence to prove that the stock was lessened in value by the nonpayment of the taxes, in an amount equal to the taxes. And, the taxes having been lawfully imposed, there can be no doubt that the plaintiff or the bank might pay them at any time, if payment thereof was necessary to the maintenance of this action.

The legislation on the subject since 1865 for the purpose of enforcing payment of the taxes imposed by the law of 1865, is of no importance in the case. It is quite immaterial whether such legislation was or was not effectual to accomplish the intended purpose. If not effectual for such purpose, the controlling facts still remain, that when the plaintiff purchased the stock it was subject to the lien for the taxes, and that such taxes were paid pursuant to law.

*Peters v. Myers*, 22 Wis., 602, illustrates these views, and is a stronger case for the plaintiff. The point there decided is correctly stated in a head note as follows: " Land conveyed in 1861, with covenant against incumbrances, was subsequently sold for taxes of 1857, reässessed in 1862 under an act of

the legislature of that year, the original assessment being invalid. *Held*, that there was a breach of the covenant, the lien of the tax relating back to the time when the land was entered on the assessment roll, and the aggregate amount of taxes for the year 1857 determined."

It appearing, therefore, that the defendant, when he sold the stock, concealed a fact, known by him and not known by the defendant, which rendered the value of the stock less than it otherwise would have been, and that the difference equals the judgment, it necessarily follows that the plaintiff is entitled to the judgment he has recovered.

*By the Court.* — Judgment affirmed.