## T. N. CAMMACK, TAX COLLECTOR, v. MATADOR LAND AND CATTLE COMPANY, LIMITED.

Decided November 15, 1902.

**Taxation—Personal Property—Situs—Constitutional Law.**

Although article 5121, Revised Statutes, provides that the county assessor shall list and assess for taxation any unrendered personal property in his county, or outside of it, if owned by a resident of the county, and article 5070 provides that where a pasture embraces parts of several counties, the live stock in such pasture shall be rendered for taxes in the several counties in the proportions of the land situated therein, yet as the Constitution provides (article 8, section 11) that all property shall be assessed for taxes in the county where situate, the assessor of the county of the residence of the owner of cattle in such a pasture had no right to assess more than that county's proportionate share of the cattle, although a portion of the balance of the cattle were not assessed in any of the other counties, and a sale for the taxes so assessed on such balance of the cattle will be restrained by injunction.

Appeal from the District Court of Motley County. Tried below before Hon. J. A. P. Dickson.

*C. S. Williams* and *G. E. Hamilton,* for appellant.

*Browning, Madden & Truelove,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by the Matador Land and Cattle Company, Limited, a foreign corporation doing business in Texas under permit, with its ranch headquarters in Motley County, where its general manager and local agent resides, against T. N. Cammack, tax collector of said county, to enjoin the sale of two sections of land levied on by virtue of the tax rolls of said county, and the collection of a tax of $1296.52, claimed by the collector to be due to the State and county for cattle not rendered by the said company. It was alleged in the petition that said company owned a pasture on the boundaries of Motley, Cottle, Floyd, and Dickens counties, all under one fence, and containing 520,000 acres of land; that 230,000 acres thereof lay in Motley County; 77,183 in Cottle County; 29,435 acres in Floyd County, and 183,382 acres in Dickens County; that on January 1, 1900, the plaintiff owned and kept in said pasture 36,298 head of cattle which it was bound to list and assess in each county a number which bore the same proportion to the whole number of its cattle as the number of acres of its land in each county bore to the whole number of acres in

the pasture, and no more; that it did list and render for taxation 16,000 head of its cattle to Motley County, which was more than the proportion allowed to that county by law; and that the assessment made by the tax collector of Motley County of 7000 head of cattle and placed on the unrendered roll of said county was unauthorized and void. That it was also void for another reason, to wit: The unrendered roll, by virtue of which the levy was made, was never "examined, corrected, and approved by the board of equalization," as provided by law.

The answer of Cammack was a general denial.

The cause was tried by a jury and the court instructed a verdict for the cattle company, and judgment was rendered perpetuating the injunction, from which Cammack has appealed.

The facts proved were in substance as follows: The cattle company owned a large pasture of 520,000 acres of land lying on the boundary lines of Motley, Dickens, Floyd, and Cottle counties in Texas, which was inclosed under once fence; 230,000 acres of this pasture lay in Motley, the balance in the other counties named as alleged in the petition; that on the 1st day of January, 1900, it owned and had running in said pasture 36,298 head of cattle subject to taxation for that year in the four named counties in the proportion hereinbefore stated; that it rendered 16,000 head at $15 per head to the assessor of Motley County, and had paid the taxes due thereon; the proper number according to the proportion prescribed by the law was 16,054 head; the company failed to render in the other counties named or elsewhere 7000 head of the balance of said cattle. Motley County was the residence county of the company in this State. When Cammack, the tax collector of Motley County, learned that the company had failed to render 7000 head of its cattle anywhere, he placed them on his unrendered roll at a valuation of $16 per head,—$112,000,—and the taxes due the State and county on that amount of property was $1296.52, but he failed to submit said unrendered roll to the board of equalization of the county, and said board never did "examine, correct and approve" said roll. The levy was made in this cause by virtue of said roll.

Article 5121, Sayles' Civil Statutes, provides: "If the assessor of taxes shall discover in his county any property, or outside his county, but belonging to a resident of the county, any personal property which has not been assessed or rendered for taxation every year for two years past, he shall list and assess the same for each and every year thus omitted while it has belonged to said resident, in the manner prescribed for assessing other property, and such assessment shall be as valid and binding as though it had been rendered by the owner thereof." This article in its present form was enacted and approved April 2, 1887 (see Acts of 1887, page 127); and by virtue thereof Cammack claims the right in his case to assess the 7000 head of cattle.

By an act approved February 13, 1889, the following article was added to our statute on taxation: "All persons, companies, and corporations owning pastures in this State which lie on county boundaries shall be

required to list for assessment all live stock of every kind owned by them in said pastures in the several counties in which such pastures are situated, listing in each county such portion of said stock as the land in such county is of the whole pasture. All persons, companies and corporations owning any kind of live stock in pastures not their own shall list said live stock in the several counties in which such pastures are situated in the same manner; and in both cases the tax upon such live stock shall be paid to the tax collectors of the several counties in which such stock is listed and assessed." 2 Sayles' Civ. Stats., art. 5070.

Our Constitution provides: "All property, whether owned by persons or corporations, shall be assessed for taxation and the taxes paid in the county where situated, but the Legislature may, by a two-thirds vote, authorize the payment of taxes of nonresidents of counties to be made at the office of the Comptroller of Public Accounts. And all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer." Const., art. 8, sec. 11.

This provision of the Constitution requires all property to be assessed for taxation in the county where it is situated, and unless the 7000 head of cattle in this instance can be said to have been situated in Motley County, Cammack had no right to assess them by placing them on his unrendered rolls. In article 5070 we think the Legislature intended to fix the situs of live stock where running on the range in pastures located on the borders of different counties, as this one was; that it had the power to do so in such cases; and that this article by the rule of proportion fixed the situs of 16,054 head of appellee's cattle in Motley County, and the balance of the 36,298 it fixed and located in the other three counties named, subject to be assessed only by the assessors of those counties in the proportion named by the article.

We therefore conclude that the assessor of Motley County had no right to assess the 7000 head of cattle named, and the injunction was therefore properly perpetuated.

This renders it unnecessary to decide the second question raised.

Finding no error in the judgment, it is affirmed.

*Affirmed.*