## JUNE, 1922

GREAT SOUTHERN LIFE INSURANCE COMPANY v. CITY OF AUSTIN.

No. 3389.   Decided June 24, 1922.

(243 S. W., 778.)

1.—Constitutional Law.

A statute must be held valid unless its enactment was expressly or by necessary implication prohibited by the Constitution,—which is to be given an equitable, not a technical construction, so as to carry out the great principles of government.   (p. 9).

2.—Same—Common Law.

The Common Law, being in force in the United States generally and in Texas by statute, is to be applied, so far as not inconsistent with statutes or the Constitution, in the interpretation of a constitutional provision which was framed with reference to it, is merely declaratory of Common Law principles, and assumes the existence of a well-understood system from which constitutional definitions are in general drawn.   (p. 9).

3.—Same—Taxation.

No sovereignty or taxing district, county or municipal, can exercise the power of taxation except as to property actually or constructively within its jurisdiction.   Therefore the Constitution, in declaring (Art. 8, Sec. 11) that property shall be taxed where situated has done no more than to declare the Common Law rule.   It did not define the words "where situated" and meant thereby where situated for the purposes of taxation under the general principles of the Common Law as then understood.   (pp. 9, 10).

4.—Taxation—Jurisdiction.

Taxes can only be imposed upon persons resident or property situated within, or business carried on, acts performed, or privileges enjoyed within the limits of the sovereignty imposing them.   (p. 10).

5.—Same.

The general Common Law rule is that property of an intangible nature, such as a debt evidenced by a promissory note, has no *situs* of its own for purposes of taxation, and is therefore within the taxing jurisdiction and assessable only at the place of its owner's domicile, regardless of the actual location of the evidence of the debt or its security.   But this rule has been

112 Tex.—1

so far abrogated that certain classes of visible and tangible personal property, as well as intangible property having similar characteristics (money, state and municipal bonds, circulating bank notes, or shares of stock in private corporations) may have, or be given by legislation, a *situs* for taxation where they are permanently kept, apart from the domicile of the owner.    (pp. 11, 12).

### 6.—Same.

So, also. securities may have a business *situs* at which they may be taxed, apart from the domicile of the owner.   Where they are used in or as capital invested in a business, the State may by legislation separate the *situs* of such property from the domicile of the owner and give them a *situs* within the State or taxing district where they are so employed.   Where there is no expression of a legislative intention to fix a local *situs* for such purpose the maxim that personal property follows the domicile of the owner governs, and the mere fact that promissory notes are actually kept in a State other than the residence of the owner, if not used in connection with some business there, gives them no *situs* in such State for the purposes of taxation. (p. 12).

### 7.—Same—Constitution.

These rules constituted the general body of the Common Law relative to the taxable *situs* of property when the Constitution was adopted, and it was with reference to these fundamental principles that the Constitution, in its declaration that all property should be taxed in the county where situated is to be construed.   (p. 13).

### 8.—Same—Legislative Construction.

The legislation of the State subsequent to the adoption of the constitutional provision as to the *situs* of property for taxation shows that same was interpreted by the legislature with reference to the established principles of the Common Law upon that subject (Acts of Aug. 21. 1876, Laws, 15th Leg., pp. 265-281, 8 Gammel's Laws, pp. 1101-1111; Rev. Stats., 1911, Arts. 7504, 7505, 7506, 7510, 7514, 7521; Vernon's Complete Texas Statutes, Art. 7510a) and is entitled to great weight in determining its construction.   (p. 14).

### 9.—Cases Distinguished.

Hall v. Miller, 102 Texas, 289; Jesse French Piano & Organ Co. v. City of Dallas, 61 S. W., 942; State v. Fidelity & Deposit Co. of Md., 35 Texas Civ. App., 214; State v. Higgins Oil & Fuel Co., 116 S. W., 617; City of Galveston v. J. M. Guffey Pet. Co., 51 Texas Civ. App., 642; Guaranty Life Ins. Co. v. City of Austin, 108 Texas, 209; examined and distinguished.   (pp. 16, 17).

### 10.—Constitutional Law—Taxation—Situs of Property.

The Act of March 22, 1909, Laws, 31st Leg., ch. 108, Sec. 38, p. 204, in providing that the *situs* of all personal property of domestic life insurance companies for the purpose. of state, county, or municipal taxation should be at the home office of such company, was not invalid as being in contravention of Art. 8, Sec. 11, of the Constitution requiring personal property to be taxed in the county where situated, though applied to securities (promissory notes) deposited in accordance with such statute with the Treasurer of the State, in a county other than that of the company's home office.   (pp. 18, 19).

### 11.—Same—Case Stated.

A life insurance company deposited with the Treasurer of the State, in the City of Austin, Travis County, in accordance with Sec. 38 of the Act of March 22, 1909, certain of its securities (promissory notes) and rendered same for taxation for the year 1911 to 1916 in the City of Houston and County of Harris, the place of its home office, and paid there the taxes assessed therefor.   *Held* that the property was properly rendered for taxation in the City of Houston; and the city of Austin could not recover from the company taxes assessed by it for those years on the securities so deposited. (pp. 18, 19).

Error to the Court of Civil Appeals for the Fourth District in an appeal from Travis County.

The City of Austin sued the Great Southern Life Ins. Co., to recover certain taxes.　Judgment was for defendant and plaintiff appealed.　The judgment being reversed and rendered in favor of appellant plaintiff, (211 S. W., 482), the insurance company obtained writ of error.

*L. A. Carlton, N. A. Stedman, Williams & Neethe, J. N. Gallagher, Brooks, Hart & Woodward, A. J. Bell, Seay & Seay, Oliver J. Tod,* and *Charles L. Black,* for plaintiff in error.

The requirement of the Constitution that property shall be taxed in the county ''where situated'' did not prevent the Legislature from passing this law, requiring that these intangible securities deposited with a public officer to subserve a special purpose, and whose control over the same was expressly limited by law, should be taxed at the Home Office of the depositing company, which company, under the law, reserved general control over the securities and the right to withdraw them at any time.

The requirement of the Constitution that property shall be taxed in the county where situated does not prevent the Legislature from defining by law the *situs* for taxation of property that is intangible in nature and ordinarily incapable of possessing an actual *situs*. Especially is this true where property of an intangible nature is deposited, in pursuance of a statute, with a public officer for a special purpose, and the property deposited is subject not only to the control of the officer for the special purposes named in the statute, but is subject also to the general control and disposition of the depositing company.　In such event, the Legislature may provide by statute that the property be taxed at the Home Office of the depositing company or in the hands of the public officer, as it may desire.

Promissory notes are mere paper evidences of debt and, while they are capable under some circumstances of acquiring an actual *situs* at a place other than the domicile of the owner, their intrinsic nature is such that the Legislature has the power to fix their taxable *situs* at the domicile of the owner.　It is within the discretion of the legislature to treat the taxable property in a promissory note as being situated either at the domicile of the owner or where the paper evidence of the debt is situated.　Promissory notes have no such actual, physical, tangible nature and existence as deprives the Legislature of the power to treat the debts they evidence as the real taxable property and to tax the same at the domicile of the owner.

These notes having been deposited with the State Treasurer, a public officer, and he having no power over them or to hold them except that given by the statute, and his holding and possession of them being subject to all the conditions and limitations set out in the

statute defining his authority, and one of these conditions being that, notwithstanding his possession and holding of the notes, they should remain taxable at the Home Office of the company, is was error to reject this condition and limitation, and undertake to define and determine the legal effect of his possession and holding, irrespective of this condition.

The Legislature had the constitutional power to define the terms and conditions upon which the State Treasurer should hold the securities deposited and to limit his holding in any way it desired.

It having been agreed as a fact that these notes were deposited with the State Treasurer under the terms and conditions of Section 38 of the Act of 1909 (and these being the only facts proven relating to the *situs* of the notes), the terms and conditions of said Act become the sole elements, either of fact or law, from which the *situs* of the securities must be determined. Obviously, the notes had no *situs* in Austin, unless the conditions outlined in the statute are such as gave them a *situs* in Austin. This being true, and one of the conditions of the deposit being that the securities should remain taxable at the Home Office of the depositing company, this condition becomes one of the elements from which the nature of the statutory deposit must be determined. The position of the city of Austin can only be sustained by denying the power of the Legislature to limit the terms and conditions upon which the State Treasurer should hold this deposit.

The Legislature, under the terms of this statutory deposit with the State Treasurer, having conferred upon the insurance company the right to withdraw any of the securities deposited at any time it desired and substitute others, and having thus expressly conferred upon the insurance company the right to make the deposit as shifting, changing and uncertain as it might desire, had also the right and power to take into consideration the shifting and changing nature of the deposit as authorized and to fix the taxable *situs* of the securities at the Home Office of the company.

Being mere evidence of debt and having a dual nature as property and capable of possessing a two-fold *situs*—one at the Home Office of the company, where the officers of the company reside who possess the general power on behalf of the company to control the securities, and the other at the office of the State Treasurer, whose possession and control of the securities was expressly limited by this statute and made subject to the right of the company to withdraw same at any time— the Legislature had the right to select between the two places and determine where the securities should be regarded as being situated for taxing purposes. Authorities: Section 38, of the Act of 1909 (Acts of 1909, Regular Session, pages 204-205, and now Article 4749, Revised Statutes of 1911); Guaranty Life Insurance Co. v. City of Austin, 108 Texas, 209, 190 S. W., 189; Ferris v. Kimble, 75 Texas, 476; San Francisco v. Lux, 64 Calif., 481; San Francisco v. Mackey,

22 Federal, 602; Smith v. Webb, 11 Minn., 500; Winston v. Salem, 131 N. C., 404, 42 S. E., 889; State v. Runyan, 41 N. J. L. 98; City of Henderson v. Barrett's Exr., (Ky.), 153 S. W., 992; Commonwealth v. Insurance Co. (Ky.), 107 S. W., 233; Kirtland v. Hotchkiss, 100 U. S., 491; Buck v. Beach, 206 U. S., 392; State Tax on Foreign Held Bonds, 15 Wallace, 300; People v. Eastman, 25 Cal., 601.

*Locke & Locke,* representing litigants similarly interested, by leave of the court filed argument in support of the positions of plaintiff in error.

*J. Bouldin Rector,* City Attorney, *J. W. Maxwell,* and *Lightfoot, Brady & Robertson,* for defendant in error.

The promissory notes and securities in controversy being actually present and having a fixed, permanent *situs* in the city of Austin on the first day of January, 1911, to 1916, inclusive, are accordingly taxable by said city for each of said years, for that,—

(a)  Promissory notes are personal property, and are more than mere evidences of debt, and are as capable of acquiring a distinct and actual *situs* for taxation purposes as any other personal property; and where such promissory notes are made to perform the functions of tangible personal property, they have all the character of that class of property, and are as fully capable of acquiring an actual *situs* for taxation purposes, apart from their owner's domicile, as any such tangible property.

(b)  Where a particular business purpose can be accomplished only by locating property at a certain place, and the property is so located and devoted to the purposes for more than a temporary period, it very clearly acquires a permanent *situs* at that place.

(c)  Appellee having voluntarily deposited said promissory notes and securities with the State Treasurer in September, 1910, and having permitted them to remain there up to the present time, a period of more than seven years, and said deposit having been made under and in accordance with the provisions of Section 38, Chapter 108, Acts 1909, now Revised Statutes, Article 4749, and for the business purposes and advantages named in said section and article, to-wit, the privilege of advertising that securities representing its capital stock were in the hands of the Treasurer of the State, and also having its policies attest that fact, and having actually advertised such fact of deposit of said notes and printed a copy of the Treasurer's receipt on the policies issued by it, such deposit amounted to a surrender by appellee of the possession of said notes and constituted the possession thereof by the State Treasurer necessarily exclusive and permanent, and was not a mere temporary removal of the notes from the place of appellee's domicile, and under these circumstances said notes acquired and had an actual, fixed, permanent *situs* in the city of

Austin on the first days of January, 1911, to 1916, inclusive, and were accordingly taxable by said city for each of said years. Guaranty Life Ins. Co. v. City of Austin, 108 Texas, 209; Guaranty Life Ins. Co. v. City of Austin, 165 S. W., 53; State v. Fidelity & Deposit Co., 35 Texas Civ. App., 214, 80 S. W., 544; Hall v. Miller, 102 Texas, 289; Jesse French P. & O. Co. v. City of Dallas, 61 S. W., 942.

The promissory notes and securities in controversy, having a distinct, permanent and actual *situs* in the city of Austin on the first days of January of each of the years for which taxes are sued for, are legally taxable for those years by the city, and judgment should have been rendered in its favor therefor, for this, under the Constitution of this State all property having an actual *situs* is required to be assessed for taxation and the taxes paid where it is situated, and while it is within the power of the Legislature to fix the artificial *situs* for taxation purposes of personal property which has not an actual fixed *situs*, yet it is not within the power of the Legislature to fix the artificial *situs* for taxation of personal property having an actual *situs* at a different place from where it is actually situated, and any attempt to do so is null and void. Const., Art., 8, Sec. 11; Guaranty Life Ins. Co. v. City of Austin, 108 Texas, 209; Guaranty Life Ins. Co. v. City of Austin, 165 S. W., 53; State v. Fidelity & Deposit Co., 35 Texas Civ. App., 214 80 S. W., 544; Hall v. Miller, 102 Texas, 289; Jesse French, P. & O. Co. v. City of Dallas, 61 S. W., 942; M. K. & T. Ry. v. Shannon, 100 Texas, 379-393; Lively v. M. K. & T. Ry., 102 Texas, 545-557. City of Galveston v. Guffy Pet, Co., 113 S. W., 585; State v. Higgins Oil & Fuel Co., 116 S. W., 617.

If it was the intention of the Legislature in enacting Section 38 of Chapter 108, Acts of 1909, now Revised Statutes, Article 4749, to fix the *situs* for taxation of all of the personal property of life insurance companies at the home office of such companies, including the personal property of such companies having an actual *situs* in some county other than that in which the home office was located, and if said section and article is to be given that construction, then it would be invalid as to all personal property having such actual *situs* elsewhere than at the home office, for that is exactly what the Legislature is prohibited from doing by the provision of the Constitution requiring all property to be assessed for taxation and the taxes thereon paid in the county where situated, and the promissory notes in controversy in this suit having an actual *situs* on the first days of January of each of the years for which taxes are sued for herein in the city of Austin, Texas, the Legislature is prohibited by the Constitution from fixing its *situs* for taxation in the city of Houston, Texas, or in any place other than its actual *situs* and location, consequently the construction of said section and article insisted upon by appellee, as fixing the *situs* for taxation of the promissory notes in controversy in the city of Houston, ‾‾‾‾ at the home office of the company, would render said statute

null and void as to these promissory notes. Const., Art. 8, Sec. 11; City of Galveston v. Guffy Pet, Co., 113 S. W., 85; State v. Higgins O. & F., Co., 116 S. W., 617; M. K. & T. Ry. Co. v. Shannon, 100 Texas 379-393; Lively v. M. K. & T. Ry. Co., 102 Texas, 545-557.

The gist of the decision in the Guaranty Life case is, that promissory notes are personal property under our laws. They are more than mere evidences of debt. They are as capable of acquiring a distinct *situs* apart from their owner's domicile as any other tangible personal property, such as cattle and horses. That where a particular business purpose can be accomplished only by locating property, be. it promissory notes, or horses or cattle, at a certain place, and the property is so located and devoted to the purpose for more than a temporary period, it very clearly acquires a *situs* at that place. That promissory notes voluntarily deposited by an insurance company under the provisions of the Act of 1907 as well as the Act of 1909, makes the possession of the Treasurer necessarily exclusive, and gives the notes a permanent *situs* in the city of Austin, and makes them taxable there. The principles of this decision should be kept constantly in mind in considering and discussing the several contentions of the plaintiff in error.

This decision is in entire harmony with the decision of the Court of Civil Appeals for the Third District in the same case, 165 S. W., 53; with the decision of this court in Hall v. Miller, heretofore cited, and with decision of the Court of Civil Appeals for the Third District in the same case, 100 S. W., 165; with the decision of the Court of Civil Appeals for the Third District in the case of State v. Fidelity & Deposit Company of Maryland, 80 S. W., 544, and this court refused a writ of error; with the decision of the Court of Civil Appeals, San Antonio District, in the case of Jesse French Piano & Organ Company v. City of Dallas, 61 S. W., 942, and a writ of error refused by this court; with the decisions of this court in the cases of M., K. & T. Ry. Co. v. Shannon, 100 Texas, 379, and Lively v. M., K. & T. Ry. Co., 102 Texas, 545; with the decision of the Court of Civil Appeals, Austin District, in the case of City of Galvestion v. J. M. Guffey Petroleum Company, 113 S. W., 585, and a writ of error refused by this court; and with the decision of the Court of Civil Appeals, San Antonio District, in the case of State v. Higgins Oil & Fuel Company, 116 S. W., 617.

In addition to the cases above mentioned, we have the decision of the Court of Civil Appeals for the San Antonio District in this case, 211 S. W., 482, and in the two companion cases now pending in this court on writ of error, of American Indemnity Company v. City of Austin, 211 S. W., 812, and Texas Fidelity & Bonding Company v. City of Austin, 211 S. W., 818.

MR. CHIEF JUSTICE CURETON, delivered the opinion of the court. This suit was filed on April 14, 1917, by the City of Austin, a

municipal corporation, incorporated by special act of the Legislature, against the Great Southern Life Insurance Company, a domestic private corporation, chartered for the purpose of doing a life in-. surance business, with its main office and principal place of business located in the city of Houston, in Harris County, Texas. The purpose of the suit was to recover taxes alleged to be due by plaintiff in error on certain securities deposited by it under the laws of the State with the State Treasurer. The taxes sued for were for the years 1911 to 1916, both inclusive. The securities deposited with the Treasurer were promissory notes, The total amount of the taxes claimed is $51,236.45. These securities were deposited in the State Treasury under Section 38, Chapter 108, Acts of the Regular Session of the Thirty-first Legislature, passed in 1909, and the principal question involved is the constitutionality of a portion of this Section of that Act.

Judgment was rendered by the trial court on December 20, 1917, in favor of the plaintiff in error. The case was appealed by the city of Austin, and the Court of Civil Appeals held that the Act under which the deposit was made, in so far as it required the securities on deposit to be taxed at the domicile of the insurance company, was in violation of Section 11, Article 8, of the State Constitution, and reversed and rendered the case in favor of defendant in error. 211 S. W., 482.

Chapter 108 of the Acts of the Legislature previously named not only provided a method for the deposit of securities, which was followed in the instance of the plaintiff in error, but set forth a plan of taxation of insurance companies subject thereto. Section 38, which became Article 4749, Revised Statutes of 1911, prescribing the method and effect of depositing securities with the State Treasurer, declares in substance that an insurance company, such as the plaintiff in error, might, at its option, deposit with the State Treasurer securities representing investments of its capital stock, with the privilege of withdrawing them, or substituting other securities therefor; that upon such deposit being made, the State Treasurer should issue his receipt for the securities, and the company making the deposit and holding such receipt should have the right to advertise such fact and print it upon its policies of insurance; and that the proper officers and agents of the company making the deposit should be permitted at all reasonable times to examine the securities, detach coupons therefrom, and collect the interest thereon, under such reasonable rules as might be prescribed by the Treasurer and the Commissioner of Insurance and Banking. The last clause in the Article reads as follows: "'For the purpose of State, county and municipal taxation, the *situs* of all personal property belonging to such companies shall be at the home office of such company.''

Section 25 of this Act, which became Article 4764 of the Revised Statutes of 1911, provides for the special plan of taxation previously

mentioned. The taxes claimed by the City of Austin were not assessed until eight years after the enactment of the statute under which the securities were deposited in this case, and after the plaintiff in error had rendered and paid all its taxes at its domicile in accordance with the Revised Statutes, Articles 4749 and 4764.

It is contended by defendant in error that the clause quoted from Revised Statutes, Article 4749, to the effect that the taxable *situs* of personal property belonging to insurance companies shall be at the home office of the company, is in violation of Section 11, Article 8, of the Constitution of this State, which declares: "All property, whether owned by persons or corporations, shall be assessed for taxation and the taxes paid in the county *where situated.*"

The law complained of must be held valid, unless its enactment was expressly or by necessary implication prohibited by the Constitution. Ashford v. Goodwin, 103 Texas, 491, 495; Ann. Cases, 1913A, 699, 131 S. W., 535, State v. McAlister, 88 Texas, 284, 287, 28 L. R. A., 523, 31 S. W., 187; Brown v. Galveston, 97 Texas 1, 75 S. W., 488; Lytle v. Halff, 75 Texas, 128, 12 S. W., 610.

The Constitution is not to be given a technical construction, but must be construed in an equitable manner, so as to carry out the great principles of the government. Black on Interpretation of Laws, page 13; Nolan v. San Antonio Ranch Co., 81 Texas, 315, 317, 16 S. W., 1064.

State constitutions are construed in the light of the common law, since the common law is generally in force in the United States. Cooley's Constitutional Limitations, 7th Edition, page 94.

The common law as declared by the courts of the several States is the rule of decision in this State, and has been so by statute since January 20, 1840. Revised Statutes, Article 5294; Grigsby v. Reib, 105 Texas, 597, 600, L. R. A., 1915E, 1, Ann. Cases, 1915C, 1011, 153 S. W. 1124.

Where the Constitution is merely declaratory of common-law principles, and does not define rights and remedies, the common law, so far as not inconsistent with the Acts of the Legislature or the Constitution, is to be applied. City National Bank v. Laughlin, 210 S. W., 617.

The Constitution was framed with reference to the common law, and in judging what the Constitution means, we should keep in mind that it is not the beginning of the law of the State, but that it assumes the existence of a well-understood system, which was still to remain in force and be demonstrated, and that the constitutional definitions are in general drawn from the common law. Hewitt v. State, 25 Texas, 722, 727; Gordon v. State, 43 Texas, 330, 340; Henderson v. Beaton, 52 Texas, 29, 60; Ex Parte King, 35 Texas, 658.

It has always been the primary and fundamental rule that no sovereignty or taxing district could exercise the power of taxation,

except as to property actually or constructively within its jurisdiction. This rule applies to counties and municipalities, as well as States. 27 American & English Encyclopedia of Law, page 648; 26 R. C. L., Section 234, page 267; State Tax on Foreign Held Bonds, 15 Wallace (U. S.), 300, 21 L. Ed., 179; Tappan v. Merchants' National Bank, 19 Wallace, (U. S.), 390, 22 L. Ed., 189; New York, etc., R. Co. v. Pennsylvania, 153 U. S., 628, 38 L. Ed., 854, 14 Sup. Ct., 952; Metropolitan Life Ins. Co. v. New Orleans, 205 U. S., 395, 51 L. Ed., 853, 27 Sup. Ct., 499; Cooley on Taxation (3d Ed.), page 84; People v. Townsend, 56 Calif., 633; Corn v. City of Cameron, 19 Mo. App., 537; Wells v. City of Weston, 22 Mo., 384, 66 Am. Dec., 627; City of St. Charles v. Nolle, 51 Mo., 122, 11 Am. Rep., 440; Matter of Lands in Town of Flatbush, 60 N. Y., 406, 407; Ham v. Sawyer, 38 Maine, 37.

Our Constitution, therefore, in declaring that property shall be taxed *where situated*, has done no more than declare the common-law rule.

The purpose of the Constitution in declaring that property should be taxed in the county *where situated*, was merely to define the general jurisdictional unit for the exercise of the taxing power, and to confine the exercise of that power to the subjects of taxation within that unit. It did not define what was meant by the words "where situated." Since it had reference to the taxing power, it evidently meant property *where situated* for the purposes of taxation under the general principles of law as then understood. County Treasurer v. Webb & Harrison, 11 Minn., 500; San Francisco v. Lux, 64 Calif., 481, 2 Pac., 254; San Francisco v. Mackey, 22 Fed., 602, 607.

Having determined that the constitutional provision under examination is to be construed in the light of the common law, we will next enter upon an inquiry as to the *situs* of property for taxation, as determined by the common law as developed and applied in this country.

The authorities heretofore cited hold that taxes could only be imposed upon persons resident within the taxing district, or property situated therein, or business carried on, acts performed, or privileges enjoyed, within its limits. 26 R. C. L., Section 234, page 267, and other authorities supra.

It is well settled that real estate may only be taxed in the municipality, county, or State in which it is actually located, 26 R. C. L., Section 236, page 269; Union Refrigerator Transit Co. v. Kentucky, 199 U. S., 194, 204, 50 L. Ed., 150, 4 Ann. Cases, 493, 26 Sup. Ct., 36. See the case of Fort Smith Bridge Co. v. Hawkins, 54 Ark., 509, 16 S. W., 565, 12 L. R. A., 487, and other cases cited in the Note in 18 Annotated Cases, page 713.

Under the common law, *mobilia sequuntur personam* was a well-established maxim, and personal property of every description was

taxable only at the domicile of its owner, regardless of its actual location. This is still the basic principle upon which the taxation of personal property rests. 26 R. C. L., Section 241, pages 273, 274. But even prior to the Revolution the principle had been abrogated to the extent that as between different towns and taxing districts certain classes of tangible personal property had a taxable *situs* where employed in business, regardless of the domicile of its owner. 26 R. C. L., Section 244, pages 276, 277; Pullman Palace Car Co. v. Pennsylvania, 141 U. S., page 18, 35 L. Ed., 613, 11 Sup. Ct., 876; State Board of Assessors v. Comptoir National D'Escompte, 191 U. S., 388, 48 L. Ed., 232, 24 Sup. Ct., 109.

As to intangible property, the maxim *mobilia sequuntur personam* embodies the general principle in relation to its *situs* for the purposes of taxation. In the absence of controlling circumstances to the contrary, the general rule is that the *situs* of intangible property for purposes of taxation is at the owner's domicile. 26 R. C. L., section 248, pages 282, 283; Kirtland v. Hotchkiss, 100 U. S., 491, 25 L. Ed., 558; Union Refrigerator Transit Co. v. Kentucky, 199 U. S., 194, 50 L. Ed., 150, 4 Ann. Cases, 493, 26 Sup. Ct., 36; Buck v. Beach, 206 U. S., 392, 51 L. Ed., 1106, 11 Ann. Cases, 732, 27 Sup. Ct., 712; Hawley v. Malden, 232 U. S., 1, 58 L. Ed., 477, Ann. Cases, 1916C, 842, 34 Sup. Ct., 201; Fidelity & Columbia Trust Co. v. Louisville, 245 U. S., 54, 62 L. Ed., 145, L. R. A., 1918C, 124, 38 Sup. Ct., 40.

It is true that the actual *situs* of certain classes of visible and tangible property, as well as intangible property having similar characteristics,—as, for example, money, state and municipal bonds, circulating bank notes, and shares of stock in private corporations, may have a *situs* for taxation where they are permanently kept, separate and apart from the domicile of the owner. 26 R. C. L., Section 249, pages 283, 284; State Tax on Foreign Held Bonds, 15 Wallace (U. S.), 300, 21 L. Ed., 179; People v. Reardon, 184 N. Y. 431, 8 L. R. A. (N. S.), 314, 112 Am. St., 628, 6 Ann. Cases, 515, 77 N. E. 970; Same Case, 204 U. S., 152; 51 L. Ed., 415, 9 Ann. Cases, 736. But the general rule is that property of an intangible nature, such as credits, bills receivable, bank deposits, bonds, promissory notes, mortgage loans, judgments, and corporate stock, has no *situs* of its own for purposes of taxation, and is, therefore, assessable only at the place of its owner's domicile, regardless of the actual location of the evidence of the debt or the security named. 26 R. C. L., Section 249, page 284; 37 Cyc. 955; State Tax on Foreign Held Bonds, 15 Wallace (U. S.), 300, 21 L. Ed., 179; Cream of Wheat Co. v. County of Grand Forks, 253 U. S., 325, 64 L. Ed., 931, 40 Sup. Ct., 558; Kirtland v. Hotchkiss, 100 U. S., 491, 25 L. Ed., 558; Fidelity & Columbia Trust Co. v. City of Louisville, 245 U. S., 54, 62 L. Ed., 145, L. R. A., 1918C, 124, 38 Sup. Ct., 40; San Francisco v. Lux, 64 Calif., 481, 2 Pac. 254; Pacific Coast Savings Society v. City and County of San Francisco,

133 Calif., 14, 65 Pac., 16; In the Matter of the Estate of James G. Fair, Deceased, 128 Calif., 607, 61 Pac., 184; The People v. Whartonby, 38 Calif., 461; The People v. Eastman, 25 Calif., 601; Johnson, Executor, v. Oregon City, 2 Oregon, 327; Foresman v. Byrns, 68 Ind., 247; Hunter v. Board of Supervisors, 33 Iowa, 376; Holland v. Board of Commissioners, 15 Montana, 460, 39 Pac., 575; Boyd v. Selma, 96 Ala., 114, 16 L. R. A., 729, 11 So. 393; Meyer & Co. v. Pleasant, 41 Louisiana Ann., 645, 6 So., 258.

It is true that securities may have a business *situs,* at which they may be taxable, separate and apart from the domicile of their owner, Where they are used in or as capital invested in a business, or as an instrumentality of such business, the State may, by legislation, separate the *situs* of such property from the domicile of the owner and give them a *situs* within the State or taxing district where they exist. In most cases, however, where liability for taxation has been predicated on a business *situs,* the local business has been maintained through a resident agent. The taxation of intangible property of the character refered to, at a *situs* other than the domicile of the owner, has usually been based upon an expression of legislative intention to fix a local *situs* for such purpose. Where there is no such intention, then the maxim that personal property follows the domicile of the owner governs. 26 R. C. L., Section 250, pages 284, 286; New Orleans v. Stempel, 175 U. S., 309, 44 L. Ed., 174, 20 Sup. Ct., 110; State Board of Assessors v. Comptoir National D'Escompte, 191 U. S., 388, 48 L. Ed., 232, 24 Sup. Ct., 109; Bristol v. Washington County, 177 U. S., 133, 44 L. Ed., 701, 20 Sup. Ct., 585; Metropolitan Life Insurance Co. v. New Orleans, 205 U. S., 395, 51 L. Ed., 853, 27 Sup. Ct., 499; Liverpool, etc., Insurance Co. v. Orleans Assessors, 221 U. S., 346, 55 L. Ed., 762, L. R. A., 1915C, 903, 31 Sup. Ct.. 550; Scottish Union & National Insurance Co. v. Bowland, 196 U. S., 611, 49 L. Ed., 619, 25 Sup. Ct., 345.

It will be noted from the cases cited that the principle of taxing credits away from the domicile of the owner is not controlled by the existence of any note or bond or other written evidence of the credit within the taxing district, but is made to depend on the transaction of business, or the employment of the property sought to be taxed as capital in the transaction of a business within the taxing State. In one of the cases cited (Liverpool, etc. Ins. Co. v. Orleans Assessors, *supra,*) the indebtedness was not evidenced by notes or written instruments of any character; yet the rule was applied. This is made plainer by a consideration of the cases which hold that the mere fact that promissory notes are actually kept in a State other than the residence of the creditor, if not used in connection with some business there, gives no *situs* in such State for the purposes of taxation. 26 R. C. L., Section 251, page 286; Buck v. Beach, 206 U. S., 392, 51 L. Ed., 1106, 11 Ann. Cases, 732, 27 Sup. Ct., 712;

Kimball Co. v. Board of Commissioners, 99 Kans., 302, L. R. A., 1917B, 1282, 161 Pacific, 644.

While the rule is that shares of corporate stock are taxable only at the domicile of the owner, yet the State has authority, in authorizing the creation of corporations, to require the payment of taxes on all shares issued, whether owned by residents or nonresidents. 26 R. C. L., Section 254, page 290; Corry v. Baltimore, 196 U. S., 466, 49 L. Ed., 556, 25 Sup. Ct., 297; Rogers v. Hennepin County, 240 U. S., 184, 60 L. Ed., 594, 36 Sup. Ct., 265.

Bank deposits may be taxed at the domicile of the owner, or where they have acquired a business *situs,* or where they are actually kept, although the latter rule does not preclude their taxation in the State of the depositor's domicile. 26 R. C. L., Section 255, page 291; Fidelity, etc. Trust Co. v. Louisville, 245 U. S., 54, 62 L. Ed., 145, L. R. A., 1918C, 124, 33 Sup. Ct., 40.

The foregoing are the general principles of law which govern the determination of the *situs* of property for taxation. The authorities cited cover various applications of these principles, but space does not permit us to discuss them in detail.

We have heretofore adverted to the fundamental principle that the power of taxation could only be exercised where the property was actually or constructively situated,—that is, within the jurisdiction of the taxing power. The authorities cited are all based upon this conception of the primary basis of the taxing power. The general rules of law which we have stated arose out of a construction and an application of this fundamental principle, and these rules constituted the general body of the law relative to the taxable *situs* of property when the Constitution was adopted. They were, and are, a part of the common law as it has been declared to exist and applied by the judicial and legislative authorities in the United States. They present the elements of the system known and followed by the people when they adopted the Constitution. Our conclusion is that by them the Constitution is to be construed and applied, and that when the Constitution declared all property should be taxed in the county where situated, it meant where situated for the purpose of taxation under the common law, the general body of the law then in existence.

That a constitution by the use of the words "where situated" does not define the actual *situs* of property for the purposes of taxation, has been held by the Supreme Court of California in a case to which we have heretofore referred: San Fancisco v. Lux, 64 Calif., 481, 2 Pac., 254. The court held that the property, which in this particular case was a bank deposit, was taxable at the domicile of the owner, although the deposit itself was in a bank in a different county and city. The court adhered to the common-law rule as to the taxable *situs* of this class of property, notwithstanding the constitutional provision referred to. There are various other California cases cited

*supra,* but it is unnecessary to discuss them. See also City and County of San Francisco v. Nevada, 22 Fed., 602. Similar words used in statutes have been construed in the same way and held not to define a taxable *situs* for intangible property, but to permit the common-law rule to apply. County Treasurer v. Webb & Harrison, 11 Minn., 500; Johnson, Executor, v. Oregon City, 2 Oregon, 327. That the use of the words ''where situated'' in the Constitution does not determine and fix the taxable *situs* of tangible and intangible personal property, other than as provided by the common-law rules, is shown by the practical and contemporary construction of the Constitution by the Legislature and courts of this State. That the practical and contemporary constructions of the Constitution are valuable aids in determining its meaning and intention in cases of doubt, is a rule universally adopted. Black on Interpretation of Laws, page 81; Cooley's Constitutional Limitations, 7th Ed., page 102.

Our present Constitution was adopted by the people February 15, 1876. The first Legislature thereafter met in that same year, and in August passed several general Acts covering substantially the entire field of taxation. Gammel's Laws, Vol. 8, pages 1091, 1111.

An examination of these and subsequent Acts will show that in many, if not in all, instances they merely declare and apply the common-law principles of taxation which we have set forth in this opinion.

Article 7510, Revised Statutes 1911, in its original form was Section 8 of the Act of 1876. It then declared, and now declares, ''All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county *where it is situated.*''

This language is similar to that used in the Constitution, and in discussing the Act of 1876 we are considering a legislative Act containing the words of the Constitution, showing clearly that the purpose of the Legislature was to pass a measure conformable to the declaration made in the organic law itself.

Article 7504, which was a part of the original tax law named above, defines real property, and we deem it unnecessary to discuss it in this opinion.

Article 7505 was Section 3 of the Act of 1876. It defines as personal property subject to taxation, all goods and chattels, including money, credits, bonds, and other evidences of debt, owned by citizens of this State, *whether the same be in the State or out of the State;* it makes taxable boats and vessels, if registered in the State, *whether they are in or out of the State,* including the capital invested therein; it makes taxable in the State all moneys at interest due to one in this State, *whether the money is at interest in or out of the State;* and declares taxable in this State, all stock in corporations, except national banks, where it is owned by inhabitants of this State, *although the stock may be out of the State.*

Article 7506 was also a part of the Act of 1876, and defines money as meaning, besides money every demand deposit owned by a person within this State, regardless of the actual location of the money deposited.

Article 7514, originally enacted in 1876, fixed the *situs* for the purposes of taxation of boats and vessels in the county where they were registered, enrolled, or licensed, or where kept, when not enrolled or licensed.

Section 16 of the Act of 1876 provided for the taxation of the funds of banks and bankers, etc., in the hands of other bankers, when subject to draft, regardless of the actual location of such funds. Gammel's Laws of Texas, Vol. 8, page 1115.

These illustrations suffice to show that the Legislature, within a few months after the adoption of the Constitution, construed it as permitting the law-making power to fix the *situs* for purposes of taxation of intangible personal property, and in some instances of tangible personal property, at the domicile of the owner, although the property itself was actually situated in other places, or in other States. The legislative Act in which this power was exercised contained, as we have shown, a section declaring that all property should be taxed *where situated*. Construing the various provisions of the Act, and giving effect to each, it is quite apparent that the Legislature by the use of the term *"where situated"* meant where situated for the purposes of taxation under the common law, as then understood or as defined by statute. It is equally clear that in the passage of this measure the Legislature construed the constitutional provision in the same way. Moreover, the Act as then passed has remained, in its general effect, the law to the present time, having come down through the several codifications of 1879, 1895, and 1911, as a part of the Revised Statutes of the State. There have been, of course, some minor changes, but none material to this inquiry.

Section 16 of the Act of 1876, relating to the taxation of banks, became Article 4684 of the Revised Statutes of 1879. The Article was amended in 1883. By the terms of this amendment, the shareholders of the stock in national banks were taxed for their shares of stock in the county in which the bank was located. All other banks, bankers, brokers, and dealers in exchange, were required to pay taxes on money in hand or in the hands of other banks, or others, subject to draft, whether the same was in or out of the State. Gammel's Laws of Texas, Vol. 9, pages 417, 418. This Act was amended in 1895, but not in the respects discussed above. Revised Statutes, Article 7521.

Article 7522, Revised Statutes, was enacted in 1885. It relates to banking corporations, and requires that all shares of stock in banks shall be rendered for taxation in the city or town where the bank is situated.

These statutes relating to the rendition of bank stocks show clearly the exercise of legislative power to fix the *situs* for taxation of intangible property at the domicile of the bank, regardless of the actual location of the stock certificates or the domicile of their owner.

The Act of the Legislature fixing the taxable *situs* of securities deposited in the State Treasury at the domicile of the depositing company was passed in 1909. In 1918 the Legislature passed an Act fixing the taxable *situs* of all securities deposited with the State Treasurer, or other State officer, where they are deposited by residents of the State or corporations chartered by the State, at the domicile of the person, firm, or corporation making the deposit, and at no other place. Vernon's Complete Texas Statutes, Article 7510a.

We have, therefore, before us legislative Acts beginning within a few months after the adoption of the Constitution and extending over a period of more than forty years, and through various codifications of the statutes, by which the Legislature has construed the constitutional provision here under consideration, and in which the Legislature has exercised the power to fix the *situs* for taxation of personal property at the domicile of the owner, or has assumed the authority to fix the *situs* of such property for taxation, regardless of the actual location of the property or the domicile of the owner. This exercise of legislative authority is entitled to great weight, and we cannot hold it without constitutional warrant unless it is plainly so beyond a reasonable doubt. Ashford v. Goodwin, 103 Texas, 491, 495, Ann. Cases, 1913A, 699, 131 S. W., 535; Railroad Commission v. H. & T. C. Ry. Co., 90 Texas, 340, 349, 38 S. W., 750; authorities *supra*.

Even as to lands and livestock, the Legislature and courts of the State have not always given this constitutional provision a literal construction or application. Revised Statutes, Articles 7511 and 7513, (originally enacted in 1879); Article 5712, passed in 1889; Court v. O'Connor, 65 Texas, 334; Nolan v. San Antonio Ranch Co., 81 Texas, 315, 317, 16 S. W., 1064; Cammack v. Matador Land & Cattle Co., 30 Texas Civ. App., 421, 70 S. W., 454.

The cases of Hall v. Miller, 102 Texas, 289, 115 S. W., 1168; Jesse French Piano & Organ Co. v. City of Dallas, 61 S. W., 942, and State v. Fidelity & Deposit Co. of Maryland, 35 Texas Civ. App., 214, 80 S. W., 544, are relied upon by defendant in error as showing the unconstitutionality of the law here in question. The cases are not in point. The first two arose over notes which were clearly part of the business being transacted in this State, and under the common law rules had a *situs* here for purposes of taxation. The last-named case is that of a foreign corporation which had deposited securities with the State Treasury. These securities were a part of its capital employed in business in the State. They were taxable here under the ordinary rules of the common law as declared in other jurisdictions.

Our attention is also directed to the cases of State v. Higgins Oil & Fuel Co., 116 S. W., 617, and City of Galveston v. J. M. Guffey Petroleum Co., 51 Texas Civ. App., 642, 113 S. W. 585. In the last-named case the actual *situs* of the boats and the residence of their owners was in Jefferson County, Texas. They were, therefore, taxable in that county under the common law and within the terms of the Constitution. The statute involved (Article 7514, Revised Statutes), must be held to apply to boats which had not otherwise obtained an actual *situs*. The Higgins Oil & Fuel Company case is similar to the one just discussed.

The foregoing cases in no sense .militate against the conclusions which we express in this opinion.

It is insisted that the case of Guaranty Life Insurance Co. v. City of Austin, 108 Texas, 209, 190 S. W., 189, is authority for the proposition that the Legislature did not have the power to fix the *situs* of the securities in question here at the domicile of the depositing company. The case is not in point. Chief Justice PHILLIPS, who wrote the opinion in the Guaranty Life Insurance Company case, stated that the taxes antedated the Act of 1909, fixing the *situs* of the personal property. of home life insurance companies at the domiciles of the companies, and that the holding made by him as to the *situs* of the securities in that case was made in the absence of a positive statute fixing the domicile of the owner as the place for taxation.

The courts of this State, in so far as occasion has permitted them to declare the law, have followed the common law rule that the *situs* of intangible property, unless fixed by statute, or unless it has acquired in effect a business *situs* under the rules which we previously discussed, is at the domicile of the owner.

In the case of Angier v. Jones, 28 Texas Civ. App., 402, 67 S. W., 449, the Court of Civil Appeals, in construing various statutes, held that where a deceased had no fixed domicile, and no property save a judgment rendered in a certain county, the statute did not authorize administration in the judgment county, since the *situs* of the judgment follows the owner's residence, saying: "The *situs* of a judgment, or of any chose in action, follows the residence of the owner, and cannot in law be regarded as situated elsewhere."

In the case of Ferris v. Kimball, 75 Texas, 476, 12 S. W., 684, the facts were, briefly, as follows: Ferris, who resided without the corporate limits of the city of Waxahachie, had his office within the city. He kept in a bank within the city certain promissory notes. The notes were payable to his order at the bank in the city of Waxahachie. He did not do a general loaning business, but kept an account in the bank, and made loans when he had means to spare. The notes were kept in his portfolio with other papers in the vault of the bank, as a protection against fire, he alone having access to them. Under this state of facts, this court held they were not taxable

112 Tex.—2

within the city of Waxahachie, saying: "Intangible personal property, such as credits, are taxable only at the place of residence of the owner, without regard to where they are kept or deposited, and equally without regard to how they were earned or to the place of residence of the debtor." As we have previously suggested, intangible personal property might acquire a *situs* different from the residence of its owner by statute, or by having acquired a business *situs*, as that term has heretofore been explained; but, in the absence of this, the common-law rule obtains as thus enunciated by Justice HENRY in the case of Ferris v. Kimball, *supra*. See also Connor v. City of Waxahachie, 13 S. W., 30.

From a consideration of all of the foregoing Texas cases, we think it clear that the courts of this State have followed the common-law rule, and have construed and interpreted the constitutional provision in the same manner as has the Legislature in the enactment of the statutes we have discussed, and that there is nothing in any of the opinions which militates against the application of the principles of the common-law in the construction and interpretation of the constitutional provision which declares that property shall be taxed where situated.

Since we have concluded that this constitutional provision is to be construed according to the principles of the common law, it necessarily follows that the Constitution leaves the field open for reasonable legislative action.

That the Legislature has the power to fix the *situs* for taxation of intangible personal property at the domicile of the owner, is evidenced, we think, by the statutes enacted by the Legislature from 1876 down substantially to the present time. That the Legislature has the authority to fix the taxable *situs* of this class of property, is clear from the decisions of the courts of other States and from the text writers. A leading text states the rule to be, as to personal property, which necessarily includes intangible personal property, that the Legislature has the power to fix its *situs* for the purposes of taxation either at the owner's domicile or where the property itself is located. 37 Cyc., 947, 952; and cases cited in the Notes. We cite the following additional cases: City of Henderson v. Barrett's Executor, 152 Ky. 648, 153 S. W., 992; Commonwealth, etc. v. Northwestern Mutual Life Ins. Co. (Ky.), 107 S. W., 233; County Treasurer v. Webb & Harrison, 11 Minn., 500; Tappan v. Merchants' National Bank, 19 Wallace (U. S.), 490, 22 L. Ed., 189; Walton County v. Morgan County, 120 Ga., 548, 48 S. E., 243; State v. Runyon, 41 New Jersey Law, 98; Botto's Executor v. City of Louisville, 117 Ky., 798, 79 S. W., 241; Freedom Township v. Douglas, 99 Kan., 176, 160 Pacific, 1147.

In view of the conclusions reached, it is unnecessary to consider the other questions presented.

Having determined that the Constitution did not of itself fix any definite *situs* for the taxation of intangible property, but left such *situs* to be determined under the rules of the common law as then understood, and having determined that the Legislature had authority to fix the *situs* of such property at the domicile of the owner, it necessarily follows that Section 38, Chapter 108, General Laws of the 31st Legislature, fixing the taxable *situs* of the personal property referred to therein at the domicile of the companies named, is constitutional and must be upheld.

We conclude that the judgment of the trial court was correct, and that of the Court of Civil Appeals erroneous. Accordingly, the judgment of the Court of Civil Appeals, in favor of the defendant in error, is reversed, and that of the trial court, in favor of the plaintiff in error, is affirmed.

*Reversed and judgment of District Court affirmed.*