

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711
December 17, 1968

Mr. Joe Resweber, County Attorney
Harris County Courthouse
Houston, Texas 77002

Opinion No. M-321

Re: Effect of payment of
ad valorem taxes on
land to one of two
adjoining counties
when the boundary
line between them is
not fixed on the
ground.

Dear Mr. Resweber:

You ask our opinion in answer to two questions:

1. Can Harris County assess and collect delinquent county ad valorem taxes on a tract of land under the facts immediately hereinafter recited?

2. If Harris County cannot assess and collect such taxes then what procedure should it take in canceling the tax assessments it has made?

It appears that location of the county line on the ground between Harris and Montgomery counties in the area where the land is located, as between the two counties, was in good faith disagreement. Apparently the boundary line was not definitely fixed on the ground with substantial markings as required by the law for the recognized establishment of a county boundary line. The land in question was carried on the tax rolls of both counties for the period 1945 through 1965, and the ad valorem taxes for these years were paid to Montgomery County. A subsequent re-survey of the county line in this area and agreement between the two counties has fixed the line on the ground so that the land now lies in Harris County.

-1572-

## ANSWER TO FIRST QUESTION

Our opinion is that Harris County can not assess or collect ad valorem taxes on this land for these years in the event such taxes were validly assessed and collected by Montgomery County. By the term "validly assessed and collected" we mean, except for the boundary issue under consideration, that the taxes were otherwise validly assessed and collected by Montgomery County according to law.

We believe the law is settled to the effect that there must be a substantial marking upon the ground as provided by statute in order to establish a county boundary line. In Travis County v. Williamson County, 4 S.W.2d 610, 613 (Tex. Civ.App. 1928, error dism. w.o.j., at 15 S.W.2d 577 Comm.App.), the Court said:

> ". . . Nothing short of a substantial marking upon the ground as provided by a statute will suffice to establish a county boundary line. . . . Those field notes and surveys do not show that the line was actually marked and identified on the ground. The proof is to the contrary. There is no showing whatever that survey lines were marked at the point where the county line was supposed to have crossed them so that land-owners might know their rights. And the mere formal adoption or approval by the commissioners' courts of the surveyor's reports and field notes will not suffice, because another survey in accordance with the field notes so approved is necessary to actually mark and establish the line upon the ground. . . ." (p. 613).

Of course this line, as further stated by the Court in its opinion, must be actually recognized by both counties (p. 613). Field notes and plats, even though agreed to by the counties whose boundary lines are in question, are not sufficient to definitely fix those boundaries. Yoakum County v. Gaines County, 139 Tex. 442, 163 S.W.2d 393 (1942); Pecos County v. Brewster County, 250 S.W. 310 (Tex.Civ.App. 1923, error dism. w.o.j.)

Articles 7154 and 7338, Vernon's Civil Statutes, furnish the answer to your first question. They read as follows:

### Article 7154:

"Lands lying on county boundaries, which have not been accurately and legally surveyed, determined or fixed, shall not be assessed or taxed in more than one county." (1)

### Article 7338:

"Real estate which may have been rendered for taxes and paid under erroneous description given in assessment rolls, or lands that may have been duly assessed and taxes paid on one assessment, or lands which may have been assessed and taxes paid thereon in a county other than the one in which they are located, or lands which may have been sold to the State and upon which taxes have been paid and through error not credited in the assessment rolls, shall not be deemed subject to the provisions of this chapter. When called upon, the Land Commissioner shall furnish the county judge of any county compiling its own delinquent tax record with such information as may enable him to determine the validity or

---

(1)  This Article was enacted in 1879 (Acts 16th Leg., R.S., 1879, p. 153, ch. CXLI, Gammels Laws of Texas, Vol. 8, 14th Leg., 1874-79) in the same identical wording and has been carried forward in each codification without any change in language.

We add as a comment that Article 7156, not controlling in our opinion, but possibly relevant to show the general policy of the Legislature, was enacted as Section 2 of this same Act.

> locality of such surveys and grants as
> have not been shown by the printed
> abstracts of the Land Office." (2)
> (Emphasis added).

The only question remaining is whether these Articles are constitutional within the provisions of Article VIII, Section 11 of our State Constitution which reads:

> "All property, whether owned by persons
> or corporations shall be assessed for taxation,
> and the taxes paid in the county where situated,
> but the Legislature may, by a two-thirds vote,
> authorize the payment of taxes of non-residents
> of counties to be made at the office of the
> Comptroller of Public Accounts. And all lands
> and other property not rendered for taxation by
> the owner thereof shall be assessed at its fair
> value by the proper officer." (Emphasis added).

Article 7154 was enacted in 1879, within three years after the adoption of our present Constitution in 1876, and has been on our statutes unaltered, for 89 years. Article 7338, enacted in 1895, has been on our statutes, unaltered, for 73 years. Further, Article 7154 was re-enacted in the codification of our civil statutes in 1895, and both of said Articles were again re-enacted in the codifications of 1911 and 1925. Thus we see that our Legislature has construed Article VIII, Section 11, of our Constitution several times and has exercised its power to designate where lands lying on county boundaries which have not been accurately and legally surveyed, determined or fixed, shall be situated within the purview of Article VIII, Section 11. This exercise of Legislative authority is entitled to great weight, and we cannot hold it without constitutional warrant unless it is plainly so beyond a reasonable doubt. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778, 784 (1922).

---

(2) This Article was first enacted in 1895, Acts 24th Leg., R.S., p. 50, ch. 42, sec. 12, the Act entitled "Delinquent Taxes."

With further reference to this constitutional provision that taxes shall be paid in the county where property is situated, the Court further said in the Great Southern case:

> "Even as to lands and live stock, the Legislature and courts of the state have not always given this constitutional provision a literal construction or application. Revised Statutes, art. 7511 and 7513 (originally enacted in 1879); article 7512, passed in 1889; Court v. O'Connr, 65 Tex. 334; Nolan v. San Antonio Ranch Co., 81 Tex. 315, 317, 16 S.W. 1064; Cammack v. Matador Land & Cattle Co., 30 Tex.Civ.App. 421, 70 S.W. 454." (at p. 784). (3)

We are convinced that the Legislature has acted within its constitutional limitations and within the limitation in Article VIII, Section 11 under consideration, in enacting Articles 7154 and 7338.

While we do not find any case which directly passes on the constitutionality of either Article 7154 or 7338 relative to land and under an analagous fact situation to the one under consideration, we do find several cases which have expressly held that statutes providing for the payment of taxes on personal property in a county other than the one where the property was actually and physically situated were constitutional within the terms of Article VIII, Section 11. See Great Southern Life Ins. Co. case, last cited; also Nolan v. San Antonio Ranch Co., 81 Tex. 315, 16 S.W. 1064 (1891); Hill & Jahns v. Lofton, 165 S.W. 67 (Tex.Civ.App. 1914, no writ); and Chisholm v. Adams, 71 Tex. 678, 10 S.W. 336 (1888). See also Attorney General's Opinion No. 0-860 (1939).

In view of the foregoing authorities and in the absence of anything presented to show any invalidity, we are required

---

(3)  The article numbers cited are those of the 1911 codification. The current codification, the Revised Civil Statutes of 1925, carries these articles as follows:  7511 now 7154, 7513 now 7156 and 7512 now 7155.

to indulge every reasonable intendment and presumption in favor of the constitutionality and validity of the statutes. 53 Tex.Jur.2d 277 - 278 Statutes, Section 184.

## ANSWER TO SECOND QUESTION

In the event the Commissioners Court of Harris County determines that the taxes paid to Montgomery County were "validly assessed and collected", as stated at the outset of our Answer to First Question, then we answer your second question as follows.

The Commissioners Court may proceed pursuant to Articles 7346 and 7347, Vernon's Civil Statutes, and find that the previous assessments on the real property for the years under consideration are invalid and enter its order canceling and removing such assessments from its tax rolls. The pertinent provisions of these Articles read as follows:

### Article 7346:

"Whenever any commissioners court shall discover through notice from the tax collector or otherwise that any real property has been omitted from the tax rolls for any year or years since 1884, or shall find that any previous assessments on any real property for the years mentioned are invalid, or have been declared invalid for any reason by any district court in a suit to enforce the collection of taxes on said properties, they may, at any meeting of the court, order a list of such properties to be made in triplicate and fix a compensation therefor; the said list to show a complete description of such properties and for what years such properties were omitted from the tax rolls, or for what years the assessments are found to be invalid and should be canceled and re-assessed or to have been declared invalid and thereby canceled by any district court in a suit to enforce the collection of taxes. . . ."

Article 7347:

> "When said list has been so made up
> the commissioners court may, at any meeting,
> order a cancellation of such properties in
> said list that are shown to have been
> previously assessed, but which assessments
> are found to be invalid and have not been
> canceled by any former order of the
> commissioners court, or by decree of
> any district court; . . ."

We believe that these Articles constitute statutory authority for the Commissioners Court to act in this respect. We agree with the holdings in prior Attorney General's Opinions Nos. 0-7251 (1946), 0-6257 (1944) and V-973 (1949) in support of this authority. Also, Raley v. Bitter, 170 S.W. 857 (Tex.Civ.App. 1914, error ref.).

## S U M M A R Y

When the county line between adjoin-
ing counties is not marked upon the ground
as required by law and agreed to by both
counties and both counties assessed land
on the basis of its being situated in their
county, the payment of such taxes to either
of the counties absolves the taxpayer from
payment of the taxes assessed by the other
county. This holding is predicated on the
assumption that the taxes paid were validly
assessed and collected by the county to
whom they were paid when considered apart
from the question of location on the ground
of the county boundary line. Articles 7154
and 7338, Vernon's Civil Statutes.

Under the facts just stated, the
county which did not receive payment of
the taxes may cancel its assessments and
remove them from its tax rolls under

authority of Articles 7346 and 7347, Vernon's
Civil Statutes.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Bill Allen
Assistant Attorney General

APPROVED:

OPINION COMMITTEE

Kerns B. Taylor, Chairman
Harold Kennedy
Alfred Walker
Houghton Brownlee
W. O. Shultz

HAWTHORNE PHILLIPS
Staff Legal Assistant